## IN THE MATTER OF THE APPEAL OF THE FIRST NATIONAL BANK OF HILLSBORO FROM THE COUNTY BOARD OF COMMISSIONERS OF TRAILL COUNTY, NORTH DAKOTA.

**Appeal — board county commissioners — board equalization — assessments — judicial.**

> Under § 1927, Revised Codes 1895, an appeal will lie from a decision of the board of county commissioners made while equalizing and correcting assessments in a controversy then pending before them and judicial in its character.

**Real estate — national banks — capital stock — assessments — individual shareholders — equalization — taxation — excessive — double.**

> Certain real estate belonging to a national bank, and in which a portion of its capital stock was invested, was assessed to the bank as other real estate in the district was assessed. At the same time the shares of stock in said bank were assessed to the individual shareholders, and, in equalizing the assessment of said shares and in fixing their value, the board of county commissioners refused to deduct from the capital of the bank the amount invested in real estate. *Held,* that such action constituted neither excessive nor double taxation.

Opinion filed December 5, 1898.

---

Note.—For the authorities on the question of state taxation of shares of stock in national banks, see notes in 45 L.R.A. 743; 3 L.R.A.(N.S.) 584; and 7 L. ed. U. S. 939.

Appeal from the District Court for Traill County, *Charles A. Pollock,* Judge.

*P. G. Swenson,* for appellant.

*Carmody & Leslie,* for respondent.

BARTHOLOMEW, Ch. J.   In 1896 a controversy arose in Traill county between the board of county commissioners, sitting to equalize and correct assessments, and the banks doing business in the county, relative to the proper equalization of the taxes upon bank stock.   As a result of this controversy the said board on the 11th day of July, 1896, passed a resolution and entered the same upon its records, which reads: "On motion all shares of bank stock was equalized to average sixty (60) per cent on capital stock."   From the decision so entered the First National Bank of Hillsboro, plaintiff herein, appealed to the district court of said county.   In the district court the plaintiff was successful, and the defendant brings the case here on appeal.

When the case was reached for trial in the district court the defendant appeared specially, and moved to dismiss on the ground that the court had no jurisdiction, for the reason that it appeared by the notices of appeal that it was an attempt to appeal from the board of equalization, and that the statute allowed no appeal from such board. The denial of this motion is the first point for our consideration.   We think the point cannot fairly be considered open in this jurisdiction since the decision in Pierre Waterworks Co. v. Hughes County, 5 Dak. 145, 37 N. W. 733.   It was squarely raised in that case, discussed with great ability by Chief Justice Tripp, and the unanimous court held that the appeal would lie.   That decision has never been reversed, modified, or questioned.   Then as now appeals were allowed from all decisions of the board of county commissioners from matters properly before them.   Political Code of 1877, § 46, chapter 21; Revised Codes 1895, § 1927.   But much learning was expended in the waterworks case in determining that the board of equalization was in fact the board of county commissioners.   The statute then in force (§ 28, chap. 28, Political Code of 1877) declared: "The board of county commissioners of each county shall constitute a board of equalization for the county, and said board or a majority of the members thereof shall hold a session of not less than two days," etc.   It was contended that there were

two separate boards composed of the same persons, and that authority to appeal from decisions of the board of county commissioners did not include authority to appeal from decisions of the board of equalization. The opinion fairly met and refuted the contention; but our legislature as if to remove all doubt upon the subject has enacted that "it shall be the duty of the board of county commissioners of each county, at its regular meeting in July of each year, to devote the first two days, or more if necessary, of such meeting to the proper equalizing and correcting of the assessment roll in its county." Revised Codes 1895, § 1213. That section was in full force when the tax in question was assessed and when the decision appealed from was entered. No such thing as a county board of equalization is recognized. The board of county commissioners equalize the taxes, and this they do in the same capacity in which they perform any other functions imposed upon them by law. It follows that the only ground upon which the motion to dismiss was based had no foundation in the law as it then stood.

But, notwithstanding the broad language of our statute which declares that appeals may be taken from "all decisions" of the board upon matters properly before it, we must not be understood to give judicial sanction to the proposition as stated. It must have its limitations. It would not be proper for us to enter into an extended discussion as to what matters may not be appealed. We need only say that the powers of a board of county commissioners are very comprehensive and extend to all ordinary matters in which the county, as such, is interested. They are in fact executive, administrative, political, and judicial or quasi judicial. Courts have no such extended powers. They are limited to the consideration of matters purely judicial in character. See §§ 85 and 96, State Constitution. But if a party be wrongfully and unjustly taxed in violation of law (and that is what plaintiff claims in this case), then a wrong exists for which there must be a remedy in law in some form. The courts can take cognizance of it, independent of any action of the county commissioners, because it is inherently judicial in character; and being a proper subject for judicial determination, the manner in which it may be brought before the court is entirely within legislative control. It is our duty to give force to the statute so far as it comes within the Constitution; and

the facts that its enforcement may result in practical inconvenience or in delay in collecting the revenue furnish us no warrant for declaring the statute void, or limiting its operation. We have no such power. Those matters pertain to the legislature exclusively. One further remark to avoid misapprehension. The word "decision" in the statute is not synonymous with "determination." The board may determine upon certain proceedings in any matter properly before it, and in a general way, and about which there is no special controversy. Such a determination would not, we think, be appealable whatever might be the nature of the matter concerning which the determination was made. A decision presupposes a controversy, and to be appealable a decision must be upon a point concerning which some specific claim was made by the party taking the appeal, and which claim was denied, in the whole or in part, by the decision of the board. In this case it sufficiently appears that there was a controversy between the banks in Traill county and each of them, on the one hand, and the county commissioners, on the other, concerning the taxation of bank stock, the banks claiming that they were being unjustly and unlawfully taxed. This claim the board, by its decision, denied. The question was a judicial question. We hold that an appeal lies in this case, and this brings us to a consideration of the merits.

We are concerned only in ascertaining whether or not the holders of the stock of the plaintiff bank have been unlawfully taxed. Under § 1184, Revised Codes 1895, the bank stock is assessed against the shareholders, but the bank as agent for such shareholders is required to pay the tax. Hence the bank is the proper party plaintiff in this case. It is conceded that the capital stock of the plaintiff bank is $50,000, divided into shares of $100 each. Its surplus fund at the date of taxation was $10,000. The resolution from which the appeal was taken fixed the valuation of shares of bank stock at 60 per cent on capital stock, or for the plaintiff bank at $60 per share. The book value of the stock, as shown by capital and surplus, was $120 per share. Its actual market value is not disclosed. What evidence there is on the point tends to show that it was a larger figure. It was not therefore to the disadvantage of the stockholders to value the entire stock at the amount of the capital stock. The evidence shows without contradiction that other moneyed capital in that taxing district was

assessed at 60 per cent of its face value.  Thus far plaintiff has no just ground of complaint; nor do we understand that it would complain if that were all.  But it is conceded that at that time the bank had invested in real estate over $43,000, and that this real estate was taxed to the bank as other real estate in the district; *i. e.,* from 25 to 33 per cent of its value.  Under these facts plaintiff claims that its stock is being taxed in violation of the constitutional provision requiring uniformity of taxation (see § 176, State Constitution), and also of that portion of the national banking act (§ 5219, U. S. Rev. Stat., U. S. Comp. Stat. 1901, p. 3502), which, while it permits the states to tax the stock of national banks in the hands of the shareholders, yet declares that such shares shall not be taxed higher than other moneyed capital.  It is urged that the real estate owned by the bank represents so much of the capital of the bank, and, since it is taxed in its character of real estate, the amount invested therein must be deducted from the total capital of the bank, and the remainder only must be used in ascertaining the value of the stock for the purposes of taxation.  To hold otherwise, it is claimed, necessarily results in taxing so much of the capital as is so invested twice,—once as real property, and once as bank stock.  This argument is specious.  It may be true that if the state should elect to exempt the real estate owned by a banking corporation when it required the shares of stock to be assessed at their full value, or if it should elect to deduct from the total capital the amount invested in real estate, and use the remainder as a basis for determining the value of the stock, that other taxpayers would have no legal ground of complaint on the score that either the bank or the shareholders were unduly favored.  Our revenue law of 1890 expressly provided that in fixing the value of shares of bank stock the assessors should deduct from the total capital of the bank the amount legally invested in real property, and the remainder should represent the taxable value of the shares,—the real estate being taxed under the general law.  There was nothing inequitable in that provision.  There is nothing inequitable in a provision that permits any taxpayer to deduct from the total amount of his assets the amount of his indebtedness, and use the remainder as representing the value of his estate; and yet no taxpayer, in the absence of such a provision, has the legal right to demand such a reduction, and it does not aid him any to show that

the evidences of his indebtedness are taxed by the same authority that taxes his estate, even when it is certain that the estate must be depleted to pay the debts. Neither the debtor nor the creditor can be heard to say that it is double taxation. Yet it is perfectly apparent that if one taxpayer be indebted in an amount equal to his entire estate, and if the evidences of that indebtedness be held by his neighbor in the same taxing district, and if both the estate and the evidences of indebtedness be taxed at their full value,—and that is the theory of our law,— the aggregate amount on the assessor's books will be double the actual, tangible wealth; and yet there is no double taxation. Why? The answer is ready in the mouth of anyone who has ever studied the rudiments of the law of taxation. Because the estate is property of one kind in the hands of one party; the evidences of indebtedness, while their value depends upon and is measured by the estate, yet they are property of another kind in the hands of another party.

This argument of double taxation has frequently been made under these same circumstances in behalf of banks and the holders of shares of bank stock. It has not been allowed by the better-considered or modern cases. Its basis is untenable. It proceeds upon the theory that the bank and its shareholders are one. Counsel in this case have argued at great length, and presented an array of figures to demonstrate that the bank pays upon its shares upon a valuation largely in excess of their par value. This is all wrong. The bank does not pay a penny of taxes upon the shares except as agent for the stockholders, and for all money so paid it reimburses itself from the dividends or other property belonging to such shareholders. The shareholders pay no tax upon the real estate. That is the property of the bank. The shareholders and the bank are as distinct for purposes of taxation as separate individuals. In law the bank is an entity,—a person,—with its individual assets and its individual liabilities. Among these individual liabilities is its obligation to pay to its stockholders the face value of the shares of stock held by them. True this obligation may not mature until the bank ceases to do business; but it is no less a sacred obligation. If, then, the property of the bank be sufficient as between the creditors of the bank, the law, for reasons of public policy, makes the shareholder a deferred creditor, but he is none the less a creditor. His certificates of stock constitute the evidences of the bank's

indebtedness to him.  He cannot object that such evidence of indebtedness is taxed because the law says it shall be taxed.  He cannot object that the real estate of his debtor, the bank, is taxed because the law says it shall be taxed.  Taxation is the rule, exemption from taxation is the exception.  He who claims exemption must be able to put his finger upon the law creating the exemption.  True it is that the contract of the shareholder with the bank is such that he is entitled to share in the net profits made by the bank.  It is this feature that brings his stock above par; and the value of his stock is dependent, in a measure, upon the earning capacity of the bank, or, in other words, upon the amount of net profits to be divided.  Of course every item of necessary expenses paid by the bank reduces this amount, but the stockholder has no more legal right to say that the bank shall not pay its indebtedness to the state than it has to say that it shall not pay its hired clerk.

In the case of Van Allen v. Assessors (Churchill v. Utica) 3 Wall. 573, 18 L. ed. 229, it is said: "The corporation is the legal owner of all the property of the bank, real and personal; and within the powers conferred upon it by the charter, and for the purposes for which it was created, can deal with the corporate property as absolutely as a private individual can deal with his own."  And again: "The interest of the shareholder entitles him to participate in the net profits earned by the bank in the employment of its capital, during the existence of its charter, in proportion to the number of his shares; and, upon its dissolution or termination, to his proportion of the property that may remain of the corporation after the payment of its debts.  This is a distinct, independent interest or property, held by the shareholder like any other property that may belong to him.  Now, it is this interest which the act of Congress has left subject to taxation by the states, under the limitations prescribed."  In that case it was held that while the capital stock of the bank was invested in United States bonds that were exempt from taxation, nevertheless the shares of stock in the hands of shareholders were subject to taxation.  To same effect is New York v. Tax & A. Comrs. 4 Wall. 244, 18 L. ed. 344; Palmer v. McMahon, 133 U. S. 660, 33 L. ed. 772, 10 Sup. Ct. Rep. 324. In Farrington v. Tennessee, 95 U. S. 687, 24 L. ed. 560, it is said: "The capital stock and the shares may both be taxed, and it is not

double taxation;" and many authorities are cited to support the proposition. Further, Mr. Justice Swayne enumerates in that case as taxable property in addition to the capital stock: (1) The franchise to be a corporation, etc., citing Hamilton Mfg. Co. v. Massachusetts, 6 Wall. 632, 18 L. ed. 904; Wilmington & W. R. Co. v. Reid, 13 Wall. 264, 20 L. ed. 568; (2) accumulated earnings, State ex rel. Mutual Ben. L. Ins. Co., Prosecutors, v. Utter, 34 N. J. L. 493; St. Louis Mut. L. Ins. Co. v. Charles, 47 Mo. 462; (3) profits and dividends, Atty. Gen. v. Bank of Charlotte, 57 N. C. (4 Jones, Eq.) 287; (4) real estate belonging to the corporation and necessary for its business, Wilmington & W. R. Co. v. Reid, 13 Wall. 264, 20 L. ed. 568; Bank of Cape Fear v. Edwards, 27 N. C. (5 Ired. L.) 516. In Tennessee v. Whitworth, 117 U. S. 129, 29 L. ed. 830, 6 Sup. Ct. Rep. 645, Mr. Chief Justice Waite, after referring to the national bank cases already cited, says: "In corporations four elements of taxable value are sometimes found: (1) Franchise; (2) capital stock in the hands of the corporation; (3) corporate property; and (4) shares of the capital stock in the hands of the individual stockholders." Again, in Bank of Commerce v. Tennessee, 161 U. S. 134, 40 L. ed. 645, 16 Sup. Ct. Rep. 456, Mr. Justice Peckham says: "The capital stock of a corporation and the shares into which such stock may be divided and held by individual shareholders are two distinct pieces of property. The capital stock and the shares of stock in the hands of the shareholders may both be taxed, and it is not double taxation." The Second Ward Sav. Bank v. Milwaukee, 94 Wis. 587, 69 N. W. 359, is identical in principle with the case at bar. The plaintiff in that case was a state bank, but it does not affect the principle. In that case the court said: "It is contended that to tax the bank upon the value of this real estate is, under the circumstances, double taxation,—first, in taxing the shares of its stockholders; and, second, in taxing the real estate of the bank, the legal owner of it. Now, the tax on the shares of stock which are owned by the stockholders is not a tax on the capital or capital stock of the bank, nor is it a tax on the real estate of the bank." And, after fully citing the authorities, the court concludes: "The objection that the taxation complained of is double taxation, and therefore illegal, cannot be sustained. Double taxation is defined as the 'requirement that one person or known subject of taxation shall directly contribute

twice to the same burden, while other subjects of taxation, belonging to the same class, are required to contribute but once,' Cooley, Taxn. 2d ed. 225. Here there is diversity of person, as well as of subject of taxation. The shares of stock are the legal property of the stockholders, and, although the value of the stock is founded upon and dependent upon the value of the property of the corporation, they are, nevertheless, a species of property altogether separate and distinct in character and ownership from the capital or property of the bank. The shareholders, as such, are not the owners of the capital or property of the bank, the title to which is vested in the bank itself. It cannot therefore be said that the case presented is one of double taxation either as to person or subject." These authorities we regard as overwhelming, and their reasoning is very satisfactory. It follows that neither the plaintiff bank nor its shareholders were doubly or unjustly taxed.

The District Court is ordered to set aside its judgment and decree herein, and reinstate the resolution appealed from.

Reversed.

Young, J., concurs.

Wallin, J., dissenting. I am unable to agree with my associates in the disposition made of this case. I differ from them, however, only upon the question of the right to appeal from the action of the county board when sitting as a board of equalization. True, such action may be somewhat in the nature of a "decision," and it is further true that the statute defining the powers and duties of the county board declares that, "from all decisions of the board upon matters properly before it, an appeal may be taken to the district court by the person aggrieved." Revised Codes 1895, § 1927. But it is conceded by the courts whose decisions are cited and referred to with approval in the majority opinion, that this statutory provision cannot be construed literally without inviting the most serious consequences to public business. In the very cases cited and those referred to in the cases cited, it is held that many "decisions" of the county board cannot be reviewed by an appeal under this statute, and that among the decisions of the board expressly enumerated as nonappealable are those which are political and those which are administrative in their nature. It will at once be observed

that this rule of construction will exclude from the operation of the statute a very large majority of the decisions which a county board in the exercise of its functions is called upon to make. The duties of the board are statutory, and such duties, with a few exceptions, are enumerated in articles 7 and 8 of the Political Code. See Revised Codes 1895, §§ 1892–1951. A glance at these sections discloses the character and kind of "decisions" which the board is called upon to make. Among them are the following, *viz.* : The division of counties into commissioner districts, also changing the boundaries of districts; to punish contempts; to cancel and destroy county warrants; to institute actions; to sell and purchase real estate for county purposes upon a majority vote therefor; to levy taxes; to construct and repair bridges; establish election precincts; equalize assessments; provide a fire-proof safe for the use of county officers; to submit to the people the question of an extraordinary expenditure of money; to provide a court room and jail; to erect county buildings and make building contracts; to settle accounts of county officers; to designate banks as county depositories, etc., etc.; also to approve the official bond of county officers. Id. § 342. Under the rule laid down in the cases cited in the majority opinion, it seems to be clear that any decision which the county board may lawfully make with respect to their duties above enumerated would be nonappealable decisions, such enumerated duties appearing to be neither administrative nor political in their nature, and clearly none of the same are strictly judicial. I am not at loggerheads with this restricted view of the appeal law. On the contrary it is my opinion that the statute should be, by construction, so narrowed in its scope in order to prevent partial suspension, if not a total paralysis, of the duties devolved by law upon boards of county commissioners. If all final decisions necessarily made with respect to the multitude of matters within the jurisdiction of county boards are removable by appeal to the district court by means of a simple notice and an undertaking for costs, and thereafter may in due course be transmitted to this court for final determination, the necessary result would be that duties which are expressly devolved by law upon executive and administrative officers would in appeal cases be cast upon others, *viz.,* judicial officers whose duties are wholly different in nature, and who are usually far less capable of performing such duties than the officers elected by the people

to perform the same. But manifestly the worst effect of such a construction of the appeal law in question would be the delays incident to such appeals if allowed.

Fortunately the courts have, to some extent, foreseen the serious consequences which would inevitably follow from the practice of allowing appeals to be taken from all "decisions" in matters properly before the board of county commissioners. It must be conceded, however, that a literal interpretation of the statute would permit all such decisions to be reviewed in the district court upon the easy terms specified in the statute; but courts under established rules of construction may depart from the literal meaning of terms employed in a statute when this course will give effect to the legislative intent. This rule has been fully recognized in the case cited in the majority opinion, and there referred to.

But I maintain that for obvious reasons, the salutary rule of construction should be applied in the case at bar, and insist that the same is broadly ignored by the majority of the court in deciding this case. In my opinion there are peculiar and cogent reasons which are opposed to allowing the assessment and collection of the public revenues to be obstructed by the vexatious delays that would certainly follow if it be once settled by this court that appeals would lie to the courts with respect to decisions in matters of taxation made by the county board. True, such delays have not occurred in the past, but I explain this fact by the prevailing understanding of the profession that no such appeal will lie. Since this court has been organized, not a single tax case has come before us under this statute. It is quite probable, too, that this appeal would not have been attempted had the law not been somewhat changed by the revisioners of the Codes. Under the original statute the board of county commissioners did not, in strictness, act as a board of equalization; but under the Revised Codes it does so act. See Revised Codes 1895, § 1213.

But I am unable to see how this change, which is nominal rather than real, can at all militate against the strength of the reasons which stand opposed to allowing an appeal from the decisions or conclusions which a board of equalization, however constituted, may make.

There are considerations too numerous to mention which, in my judgment, should constrain the courts of this state to hold that the

action of boards of equalization ought to be added to the already long list of "decisions" which under the cases cited are nonappealable under this statute. I maintain that the appeal is not only inadequate as a remedy, but that it is wholly unnecessary to the protection of taxpayers against the consequences of illegal taxation. Other remedies of the taxpayer are ample. If an illegal tax culminates in a lien upon or a sale of real estate, a court of equity will cancel the lien or vacate the sale and the muniments of title resulting from the sale; and, on the other hand, if a tax upon personal property is unlawful, the taxpayer, when compelled by distraint of his property to pay the same, an action at law can be maintained to recover back such taxes, with costs. This remedy was open to this plaintiff. Besides these familiar remedies, others are added by statute whereby the taxpayer is fully protected by the courts against unlawful taxation, without resort to the dubious right in question.

I claim, further, that such appeals are inadequate as a means of arresting the illegal action of either the board of equalization, or the other county officers who have duties to perform in connection with the levying the taxes, extending the same upon the tax lists or collecting the tax so extended. After property values are equalized by the county and state boards, the next step under the statute is to extend the tax upon the list as against the values so equalized, and this is followed by delivering the list to the county treasurer for collection. Once in the hands of the county treasurer the taxes on the list are required to be collected by that officer, and there is no power short of a decree of a court which will excuse the treasurer for the noncollection of such taxes. The collection of taxes is not among the duties of county boards, nor can such board lawfully prevent such collection by its unaided action. And just here attention is called to the fact that an appeal from the action of the board of equalization is a useless expenditure of energy, and wholly abortive as a means of preventing any step required by law to be taken by the taxing officers, after the board has completed its work and has equalized the taxes and adjourned *sine die*. If an illegal tax is laid by means of the unauthorized action of the board, such illegal tax must nevertheless, under the statute, so far as the tax is affected by the alleged right of appeal, be extended upon the tax list by the auditor and be thereafter collected by the treasurer. The appeal

does not stay the proceedings either of the board or of other officers who have duties to perform in laying the taxes for the public revenues. No provision is made in the statute either for a stay or a stay bond; but, on the contrary, the statute requires only a simple bond for costs in the district court. Revised Codes 1895, § 1927. It is therefore entirely clear that the alleged right of appeal is inadequate as a means of preventing the placing of an illegal tax upon the tax list, or as a means of preventing the treasurer, who is not a party to such appeal, from collecting the illegal tax. The impotency of such appeal as a remedy is made manifest in this case.

The obnoxious resolution of the board of equalization was adopted in the month of July, 1896, and the appeal therefrom was perfected within thirty days thereafter. Since then the appeal has been pending in the district court and in this court until the present time,—December, 1898. Meanwhile, what have the taxing officers of Traill county been doing in the way of discharging their imperative duties under the law with respect to collecting the public revenue? This question is readily answered from the record, which shows that the alleged illegal tax has in due course found its way to the tax list, which at last advices was in the hands of the county treasurer for collection, where it was placed in due course under the law in the year 1896. If the treasurer has *ex gratia* foreborne to collect this tax, it has been solely an act of forbearance on his part, and cannot be attributed to any restraint placed upon his action by virtue of this appeal. Not only does the appeal not operate as a stay of official action in general, but the treasurer, not being a party to it, cannot be affected by such appeal. Nor did the appeal operate practically or at all to restrain the county auditor from extending the tax against the plaintiff's property in accordance with the value fixed in the obnoxious resolution of the board.

Again, it must not be overlooked in this connection, as further illustrating the abortive character of this alleged remedy by appeal, that the good or bad effect of the resolution of the board remains intact despite the appeal. The trial court, assuming the powers of a court of equity, decreed that the resolution should be "reversed," but did not attempt the impossible by further decreeing that the board should in 1897 reassemble and pass another and different resolution, fixing the value of plaintiff's property as a basis for a tax to be levied for

the year 1896. The court below went no further than to "reverse" the resolution appealed from, and thereby declared in effect that all taxes based upon the same were illegal; but this conclusion, as has been seen, produced no effect upon events already concluded. It did not arrest any official action based upon the resolution. True the trial court further decreed that the part of the tax found by that court to be legal should be paid "immediately," and that the county treasurer should be enjoined from collecting the part found to be illegal by the trial court. But this result we have seen could have been reached by other proceedings, in which the action of the board would not be involved. Besides it is apparent that the judgment in the appeal case is not binding upon the treasurer, for the simple reason that he had not been heard in the case, not being a party thereto.

The appeal law, § 1931, provides in terms that "the district court may enter a final judgment," but this cannot be construed as conferring authority to enter a judgment without a hearing and against strangers to the record. But the same section also confers upon the district court authority to send the same back to the board, with an order how to proceed, and "require such board to comply therewith by mandamus or by attachment for contempt." If this section can be applied to the case at bar at all, the only proper course to pursue (after the district court had entered its judgment reversing the obnoxious order) was to send the case back to the board, and direct it to annul or reverse the order appealed from. There would, it is true, be insurmountable obstacles to this course of procedure. Not only had the board of equalization adjourned *sine die* for the year 1896, without power to reassemble as such board, but, as we have seen, other taxing officers not parties to the record had in the interval taken action based upon the resolution in question, and taxes based thereon had been levied, extended, and delivered to the treasurer for collection long before the district court entered its judgment. I allude to these considerations, however, only for the purpose of further illustrating the thought that the legislature could not have contemplated an appeal from the action of a board of equalization when it enacted the statute embraced in § 1941, Revised Codes 1895.

But there is another consideration which is very persuasive to my mind at least, against this alleged right of appeal. It is this: Boards

of equalization are chosen by the people to correct errors and irregularities which may arise in valuing property for purposes of taxation, and the law expressly devolves these duties upon such board and boards of review. The members of the board are drawn from all parts of the county, and hence are familiar with property values in all parts of the county, and are therefore in a position to discharge their duties intelligently and with a wise reference to the interests of both the public and the taxpayer. These tribunals are required to assemble annually at a fixed time and place, and there adjust values in accordance with law and the principle of equity and justice. To this tribunal the taxpayer, whether citizen or not, has a legal right to resort, and there he may state his grievances and find his remedy without expense and without let or hindrance from any source, and if he is denied a hearing, that fact alone will invalidate any tax that may be imposed without a hearing. Inasmuch as an ad valorem tax can only be laid upon a value ascertained by some board or officer, it follows that such board or officer should have the final right to determine values. But grant a right of appeal, and what follows? Simply this: A court will supersede the duly constituted authority, and substitute his own estimates of values, absolute and relative, for that of the board chosen by the people for that purpose. I do not hesitate to say that in my judgment the courts are far less able and fitted for this work than are the county boards. Courts can only act upon evidence, while boards are not limited to evidence, but can and should act both upon evidence and their own knowledge of facts and values. This court said in Wells County v. McHenry, 7 N. D. 246, 74 N. W. 241: "We doubt the expediency of any legislation which should vest all the powers of boards of equalization in the ordinary judicial tribunals. Local boards are better qualified to exercise such functions. And the imposition of such burden upon the courts would seriously impair their efficiency in the discharge of those duties which are germane to the judicial branch of the government." Final authority to fix values for taxation must rest somewhere, and I am confident that it is intended to be left with the assessors and the various boards of review and equalization. Their conclusions are not supposed to be absolutely accurate or absolutely just in all cases. Yet experience has shown that the results reached by these officials are generally sound and just. If these officers do, however, act

illegally, corruptly, or without jurisdiction, there is a remedy to be found in the courts for such abuse, and this without resorting to the alleged right of appeal.

I will add but a single consideration to these already advanced. If the decisions of the county board, while sitting as a board of equalization, are reviewable under this statute, I can see no escape from the conclusion that a decision of the county board, in levying the annual taxes for all purposes, is likewise appealable under the same statute. But if such an appeal would not arrest the collection of the taxes as levied, and I think it would not have that effect, the same would be an idle and worse than useless proceeding; but if it did stay the collection of the tax, such a result would be nothing less than a public calamity.

These considerations and many others which could be added, have convinced me that the legislature did not intend to include tax proceedings in providing for appeals from the "decisions" of county boards. Such appeals, if ever allowed, can only be justified under a statute which clearly confers the right, and our statute, in my judgment, does not do so.

(This case should have been reported in one of the earlier volumes, but was, through the inadvertence of the printer, mislaid and omitted.)