**SIGNAL OIL AND GAS COMPANY,**
Respondent,

v.

**WILLIAMS COUNTY, North Dakota, a
public corporation, Appellant.**

Civ. No. 8863.

Supreme Court of North Dakota.

March 8, 1973.

Rehearing Denied April 12, 1973.

Bjella & Jestrab, Williston, for respondent.

Gerald Rustad, Asst. State's Atty., Williston, for appellant.

Kenneth M. Jakes, Sp. Asst. Atty. Gen., North Dakota State Tax Department, Bismarck, amicus curiae.

STRUTZ, Chief Justice.

Signal Oil and Gas Company, hereinafter referred to as Signal, owns and operates a gas-separation plant located in Tioga Township, Williams County. In 1971, the assessor for the Township assessed as real property all the land, buildings, structures, fixtures, machinery, and equipment of this plant. The land was assessed at $560 and the buildings, structures, fixtures, machinery, equipment, and other improvements were assessed at $2,724,222, for a total assessed valuation of $2,724,782. This assessment was protested by Signal before the Township Board of Equalization on grounds that it was illegal. The protest was disallowed by the Township Board of Equalization.

On July 1, 1971, Signal appealed to the Board of County Commissioners, sitting as the County Board of Equalization. This appeal was in the following language:

" . . . Specifically taxpayer protests the assessment as made by the Township Assessor and appeals from the decision of the Township Board of Equalization to the extent that said assessment specifically includes within the value of real estate for real estate tax purposes tanks and loading facilities having an actual value of $1,112,261, an assessed valuation of $266,942, and a taxable valuation of $133,471. Taxpayer requests that the

proposed 1971 assessment be adjusted by deleting the value assigned to such tanks and loading facilities on the grounds and for the reason that said property is not real estate within the statutory definition and is not used or intended for use in any process of refining."

This appeal was denied by the County Board of Equalization.

On August 24, 1971, Signal appealed to the State Board of Equalization, objecting to the appraisal, valuation, and assessment on grounds that the same were illegal. The State Board of Equalization denied this appeal.

Signal also appealed to the district court of Williams County from the decision of the Williams County Board of Equalization denying its protest. This appeal apparently was taken under the provisions of Section 11–11–43, North Dakota Century Code. At the trial, the issues and the relief demanded by Signal were broadened, and Signal not only requested an abatement of the assessed valuation of the tanks and loading facilities, which was its demand before the County Board of Equalization, but also demanded that the assessed valuation of all other machinery and equipment in the gas-separation plant be abated on the ground that such machinery and equipment were not taxable under Section 57–02–04, North Dakota Century Code. It further asserted—in the event that this property was held to come within the scope of the above section—that the law was unconstitutional.

The district court entered judgment for Signal, ordering the Board of County Commissioners, sitting as the County Board of Equalization, to abate the taxes of Signal for that portion of the total assessed valuation of its gas-separation plant which covered machinery and equipment. The court found and concluded that the machinery and equipment owned by Signal were, in fact, taxable under Subsection 3 of Section 57–02–04. It further held that that subsection was unconstitutional and in

violation of Section 176 of the North Dakota Constitution, and that it violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Neither the findings, conclusions of law, nor judgment of the court disclose whether any relief was granted by the district court with respect to Signal's demand for abatement of the total assessed valuation of storage tanks and loading facilities, which was its demand before the County Board of Equalization.

After the entry of judgment, Williams County moved for a new trial under Rule 59, North Dakota Rules of Civil Procedure, the County asserting that the trial court lacked jurisdiction to review the action of the County Board of Equalization, except as it related to the assessment of Signal's storage tanks and loading facilities, since that was the issue raised by Signal in its appeal to the County Board of Equalization. The court denied the motion for a new trial on the ground that the issue presented by Signal in the district court had been tried by the mutual consent of the parties, and the judgment which granted relief beyond that which had been requested by Signal in its appearance before the County Board of Equalization therefore was an appropriate exercise of the court's jurisdiction.

■ This determination by the trial court is claimed by the County to be error on this appeal. The County asserts that Signal's appeal to the district court was from a decision of the Board of County Commissioners sitting as the Board of Equalization, and that Signal first should have presented its claim to the Board of County Commissioners, as provided in Section 57–45–09, North Dakota Century Code. That section provides:

"No action shall be brought in the courts of this state to annul any taxes or tax assessments, . . . or to recover back taxes erroneously paid, or any part thereof, until the same first shall have been submitted to the board of county

commissioners for adjustment in accordance with the existing law, and any action brought without having been first submitted to the board of county commissioners shall be dismissed without prejudice."

We conclude that the trial court correctly denied the motion for new trial and properly refused to dismiss the appeal. Section 103 of the North Dakota Constitution provides, in part:

"The district courts shall have original jurisdiction, except as otherwise provided in this constitution, of all causes both at law and equity, and such appellate jurisdiction as may be conferred by law. . . ."

Section 11–11–39, North Dakota Century Code, provides that an appeal may be taken to the district court from any decision of the Board of County Commissioners by any person feeling aggrieved thereby. Signal chose to appeal from the decision of the County Board of Equalization on the ground that the decision upheld the Township's assessment of its property and refused to find any part of the tax invalid. This court in the early case of In re First National Bank of Hillsboro, 25 N.D. 635, 146 N.W. 1064 (1898), held that the provision of law which now is found in our Code as Section 11–11–39 permits an appeal to be taken to the district court from any decision of a board of county commissioners by any person aggrieved thereby, and that this provision permits an appeal to the district court from a decision of a board of county commissioners sitting as a county board of equalization. This provision remains unchanged in our law today. It would be ridiculous to require the taxpayer to present its claim to the Board of County Commissioners after that identical board, sitting as the County Board of Equalization, had denied its protest. The law will not require an idle act. Sec. 31–11–05, Subsec. 23, N.D.C.C.

■ We next will determine whether the court had jurisdiction to consider relief beyond that which had been demanded in the appeal to the County Board of Equalization by Signal from the Township board's decision. We conclude that parties may, by the voluntary submission of an issue to the district court, invoke the original jurisdiction of the court to decide such issue, even where without such voluntary submission the district court would have no jurisdiction to decide such issue in the exercise of its appellate jurisdiction only. See In re Edinger's Estate, 136 N.W.2d 114 (N.D.1965), where this court held that party litigants may invoke the original jurisdiction of the district court on appeal from an order of the county court, where they voluntarily submit an issue within the equitable jurisdiction of the court for its determination.

■ Having determined that the parties may, by the voluntary submission of an issue to the district court, invoke the original jurisdiction of the district court to decide such issue, we now turn to a determination of whether the parties in this case did, in fact, voluntarily submit the issue of legality of the assessments to the district court so that the district court had jurisdiction to decide the legality of such assessments of Signal's machinery and equipment. After a careful review of the entire record, we find that the parties did submit such issue to the district court. Although the County did move for a dismissal of Signal's appeal on the ground that no appeal could be taken from the decision of the Board of County Commissioners, sitting as the County Board of Equalization, at no time prior to or during the trial did the County object to the trial of the issue of legality of the assessments of Signal's machinery and equipment as real property. The objection to the court's jurisdiction was not raised by the County until after the entry of judgment declaring such assessments invalid. We therefore conclude that the district court's judgment holding the assessments invalid rests upon the valid exercise of the district court's jurisdiction,

and it therefore is properly subject to review on appeal to this court.

We now shall proceed to a consideration of the constitutionality of Subsection 3 of Section 57–02–04, North Dakota Century Code, the statute under which the assessments against the property of Signal were made.

At the trial in the district court, the functioning of Signal's plant in Tioga Township was detailed, and the physical materials and structure of the plant were explained. The parties stipulated that certain exhibits which depicted in detail various other industries in the State and their location be admitted in evidence, and further stipulated that the legislative history of the enactment of Section 57–02–04, North Dakota Century Code, be received in evidence by the court.

Subsection 3 of that law, under which Signal's plant had been assessed and taxed, and which is claimed by Signal to be invalid, provides that "real property," for the purpose of taxation, includes:

"3. Machinery and equipment, but not including small tools and office equipment, used or intended for use in any process of refining products from:

"a. Oil or gas extracted from the earth, but not including such equipment or appurtenances located on leased oil and gas production sites, or

"b. Sugar beets."

The trial court found this provision of the statute under which Signal's plant had been taxed to be unconstitutional, in that it classified property of Signal for tax purposes in a manner not uniformly applicable to all within the class, in violation of Section 176 of the North Dakota Constitution. It further found that this statute violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

A valid enactment of the Legislature can be held unconstitutional only if at least four of the judges of the Supreme Court so determine. Section 89, North Dakota Constitution.

An Act of the Legislative Assembly must be presumed to be constitutional, and any doubt as to its constitutionality must, if at all possible, be resolved in favor of its validity. Montana-Dakota Utilities Co. v. Johanneson, 153 N.W.2d 414 (N.D. 1967); State ex rel. Johnson v. Baker, 74 N.D. 244, 21 N.W.2d 355 (1946).

Specification No. 2 claims that it was error for the trial court to find that there are other businesses and industries which process nautral resources by removal of sediments and impurities from the raw product, which own machinery and equipment, and which produce fuels for commercial sale as competing fuel to that produced by Signal, whose machinery and equipment is not taxable under Section 57–02–04, Subsection 3, and the court made no finding that there was no conceivable distinction which would justify the classification, and therefore it was error for the court to conclude that this classification constitutes an unreasonable classification.

Specification No. 3 claims that it was error for the trial court to find and conclude that there is no reasonable ground for distinguishing between personal property used in refining oil and gas and the personal property used in refining other natural fuels such as lignite coal which compete with oil and gas, and that such classification is discriminatory, and that Section 57–02–04, Subsection 3, is discriminatory, unreasonable, and arbitrary and not uniformly applicable to all personal property within the classification, and thus is in violation of Section 176 of the North Dakota Constitution and in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

These two specifications can be considered at the same time. Together, they as-

sert that the trial court erred when it concluded that the classification of Signal's machinery and equipment at its gas-separation plant as real property under Subsection 3 of Section 57–02–04 was unconstitutional and in violation of Section 176 of the North Dakota Constitution and of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, in that such section did not apply to other similar businesses. The portion of the statute complained of attempts to classify as real property the machinery and equipment used and intended for use in any process of refining products from oil and gas extracted from the earth, not including such equipment located on leased oil- and gas-production sites, and machinery and equipment used in the processing of sugar beets.

■■■ Section 176 of the North Dakota Constitution has been construed by this court as granting to the Legislature discretion to classify various subjects, including property and persons, for tax purposes. Souris River Telephone Mutual Aid Corp. v. State, 162 N.W.2d 685 (N.D.1968). This legislative authority and discretion is subject only to the limitation that such classification must not be arbitrary. The uniformity required under Section 176 of the North Dakota Constitution is substantially the same as the standard required under the Fourteenth Amendment of the United States Constitution. Northwestern Improvement Co. v. Morton County, 78 N.D. 29, 47 N.W.2d 543 (1951). Consequently, our inquiry into the constitutionality of the classification permitted by Section 57–02–04, Subsection 3, which designates certain machinery and equipment as real property, will be limited to the application of the constitutional prohibitions of the Equal Protection Clause of the Fourteenth Amendment.

The district court held that Subsection 3 of Section 57–02–04 is unconstitutional because the statute, by classifying for taxation as real property the machinery and equipment of oil and gas refiners and sug-

ar beet refiners, while at the same time failing to so classify the machinery and equipment of other processors of raw materials such as lignite coal or potatoes, so discriminates against oil and gas refiners and sugar beet refiners as to deny them equal protection of the laws.

The question of classification of property for tax purposes is one that has caused much difficulty in many jurisdictions, and the courts have not always agreed as to what constitutes an unlawful classification. A careful study of the long line of decisions by the United States Supreme Court in which it has traced the effect of the Fourteenth Amendment on the power of the States to classify property for purposes of taxation, however, indicates that the Court has adopted a position of judicial restraint by investing tax legislation of the States with a presumption of constitutionality and requiring merely that the classification made by a challenged statute bear some rational relationship to a conceivable legislative purpose. Allied Stores of Ohio v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L. Ed.2d 480 (1959), and cases cited.

■■■ While there is nothing in the Federal Constitution which requires State taxation to be equal, uniform, or just in all respects, and while, in the absence of express provision therefor in the State Constitution, it is not essential to the validity of tax statutes that they operate equally and uniformly, the basic principle of taxation is equality, and the aim of taxation should be to produce, as nearly as possible, equality and uniformity in the burdens imposed. 84 C.J.S. Taxation Sec. 21, p. 75.

The restriction upon the State in the Federal Constitution is that the State shall not exercise its power to tax in such a way as to deny to any the equal protection of the laws. Fourteenth Amendment, United States Constitution.

■■■ This restriction does not require the adoption of an iron rule of equal taxation or prevent differences in taxation or discretion in the selection of subjects or

reasonable classification of subjects for taxation. State Board of Tax Comrs. v. Jackson, 283 U.S. 527, 51 S.Ct. 540, 75 L. Ed. 1248, 73 A.L.R. 1464 (1931).

■ It has been held that the Legislature may fix the basis of taxation without violating the Due Process Clause of the Fourteenth Amendment unless the legislative action is palpably arbitrary or a plain abuse. Yazoo & M. V. R. Co. v. Board of Miss. Levee Comrs., 188 Miss. 889, 195 So. 704, appeal dismissed, 311 U.S. 607, 61 S. Ct. 21, 85 L.Ed. 384 (1940).

■ A tax law which falls impartially on all corporations of the same kind or class satisfies the requirement of equality and uniformity, although other corporations of a different character are taxed at a different rate, or on a different basis, or not at all. But if a law discriminates between corporations of the same class, it is invalid. 84 C.J.S. Taxation Sec. 29, p. 92.

The posture of judicial restraint adopted by the United States Supreme Court has been expressed in numerous cases and was apparent from the language used by that Court in its earliest decisions touching the issue of State taxation versus equal protection of the laws. In Bell's Gap R. Co. v. Commonwealth of Pennsylvania, 134 U.S. 232, 10 S.Ct. 533, 33 L.Ed. 892 (1890), a case in which the Court upheld a State law subjecting securities and bonds issued by corporations to a rate of taxation higher than that imposed on other moneyed securities, the Court said:

". . . The provision in the fourteenth amendment, that no state shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a state from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries, and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the state in framing their constitution. But clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition. It would, however, be impracticable and unwise to attempt to lay down any general rule or definition on the subject that would include all cases. They must be decided as they arise. We think that we are safe in saying that the fourteenth amendment was not intended to compel the states to adopt an iron rule of equal taxation. If that were its proper construction, it would not only supersede all those constitutional provisions and laws of some of the states, whose object is to secure equality of taxation, and which are usually accompanied with qualifications deemed material, but it would render nugatory those discriminations which the best interests of society require; which are necessary for the encouragement of needed and useful industries, and the discouragement of intemperance and vice, and which every state, in one form or another, deems it expedient to adopt."

■ The States have the right to enact laws for the taxation of property. However, to avoid violation of the Equal Protection Clause of the Fourteenth Amendment in classifying property for purposes of taxation, States must proceed upon a rational basis and may not resort to classifications that are culpably arbitrary. Classi-

fications of property must rest upon some ground of difference having a fair and substantial relation to the objects of the legislation. See Allied Stores of Ohio v. Bowers, *supra*; Louisville Gas & Electric Co. v. Coleman, 277 U.S. 32, 48 S.Ct. 423, 72 L.Ed. 770 (1928); Air-Way Electric Appliance Corp. v. Day, 266 U.S. 71, 45 S. Ct. 12, 69 L.Ed. 169 (1924); Ohio Oil Co. v. Conway, 281 U.S. 146, 50 S.Ct. 310, 74 L.Ed. 775 (1930).

■ If the classification rests upon some reasonable consideration of difference or policy, there is no denial of equal protection of the law. State Board of Tax Comrs. v. Jackson, *supra*; Brown-Forman Co. v. Kentucky, 217 U.S. 563, 30 S.Ct. 578, 54 L.Ed. 883 (1910).

■ It is also well established that a classification although discriminatory is not arbitrary nor violative of the Equal Protection Clause of the Fourteenth Amendment if any state of facts reasonably can be conceived that would sustain it. Rast v. Van Deman & Lewis, 240 U.S. 342, 36 S.Ct. 370, 60 L.Ed. 679 (1916); New York Rapid Transit Corp. v. City of New York, 303 U.S. 573, 58 S.Ct. 721, 82 L.Ed. 1024 (1938). Furthermore, a court need not know the special reasons, motives, or policies of a State legislature in adopting a particular classification, so long as the policy is one within the power of the legislature to pursue, and so long as the classification bears a reasonable relation to those reasons, motives, or policies.

■ Finally, when the classification chosen by the State legislature for purposes of taxation is challenged because of alleged constitutional infirmities, the burden rests upon the challenger to establish that the classification chosen by the legislature bears no reasonable relation to the conceivable legislative purpose. Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937).

In the light of these principles of law which have been enunciated many times by the United States Supreme Court, we believe that the district court erred when it concluded that the classification of machinery and equipment of refineries of oil and gas and refineries of sugar beets as real property for purposes of taxation constituted a violation of the Equal Protection Clause.

As is pointed out by Williams County, there are several conceivable, legitimate, legislative purposes to which the challenged classification may reasonably relate. We shall discuss only two of these purposes.

The most obvious purpose of the challenged legislation, of course, is the raising of revenue. This purpose is a legitimate one which will justify a classification which reasonably relates to it. New York Rapid Transit Corp. v. City of New York, *supra*, and cases cited.

Another obvious legitimate purpose of the challenged statute, which may have motivated the Legislature in classifying oil and gas refineries and sugar beet refineries separately from the processing plants of other raw products such as lignite and potatoes, is the encouragement of such industries as lignite processing and potato processing. This purpose of encouraging one industry through favorable taxation is a legitimate one which will justify a classification which reasonably relates to it. Allied Stores of Ohio v. Bowers, *supra*; Southwestern Oil Co. v. Texas, 217 U.S. 114, 30 S.Ct. 496, 54 L.Ed. 688 (1910). Thus we see that there is a conceivable purpose for the classification which our Legislature made in Section 57–02–04, Subsection 3, North Dakota Century Code. In view of this purpose, we are unable to conclude that the action of the State of North Dakota in enacting this statute was in contravention of the Equal Protection Clause of the Fourteenth Amendment. The language of the Supreme Court in

Southwestern Oil Co. v. Texas, *supra*, clearly points this out. The Court stated:

" . . . It is sufficient for the disposition of this case to say that, except as restrained by its own Constitution or by the Constitution of the United States, the state of Texas, by its legislature, has full power to prescribe any system of taxation which, in its judgment, is best or necessary for its people and government; that, so far as the power of the United States is concerned, the state has the right, by any rule it deems proper, to classify persons or businesses for the purposes of taxation, subject to the condition that such classification shall not be in violation of the Constitution of the United States; that the requirement by the state, that *all* wholesale dealers in *specified articles* shall pay a tax of a given amount on their occupation, without exacting a similar tax on the occupations of wholesale dealers in other articles, cannot, on the face of the statute or by reason of any facts within the judicial knowledge of the court, be held, within the meaning of the Fourteenth Amendment, to deprive the taxpayer of his property without due process of law, or to deny him the equal protection of the laws; and that the Federal court cannot interfere with the enforcement of the statute simply because it may disapprove its terms, or question the wisdom of its enactment, or because it cannot be sure as to the precise reasons inducing the state to enact it."

We therefore conclude that the classification which distinguishes between property used in refining oil and gas and property used in refining other fuels, such as lignite coal, is not an unreasonable or arbitrary classification and is not in violation of Section 176 of the North Dakota Constitution nor the Equal Protection Clause of the Fourteenth Amendment.

For reasons stated in this opinion, the judgment of the district court ordering an abatement of all that portion of the total assessed valuation of Signal's property attributable to machinery and equipment is reversed, and judgment is ordered entered in favor of Williams County.

ERICKSTAD, KNUDSON and PAULSON, JJ., concur.

TEIGEN, Judge (concurring specially).

I concur in the result. However, I feel it should have been pointed out in the majority opinion that, although natural gas and lignite coal may be broadly classified as natural fuels of this State, the differences between their physical characteristics are so self-evident that there is reasonable ground for distinguishing between the machinery and equipment used, or usable, in processing them for consumption. The same is true as between sugar beets and potatoes, and to this list may be added a number of other natural products which are also processed, such as, small grains processed for human consumption and feed crops processed for livestock consumption, and the machinery and equipment used and usable for such processing.

No contention is made here and none can reasonably be made that machinery and equipment required to convert natural gas into usable fuels can also be used to convert lignite coal into a usable fuel. I believe that it would be proper to take judicial notice of the fact that machinery and equipment used in the processing of natural gas in no way compares with the machinery and equipment used in processing briquettes, for example, from lignite coal, or the machinery and equipment presently being used experimentally for lignite coal gasification purposes. These various facts alone, it seems to me, show that such great differences exist in relation to the subject as to prevent the courts from saying that the processing of the two are in any respect alike and that these differences make the classification reasonable, not arbitrary, and one which actually exists. The classification, in my opinion, is based on real and substantial differences which furnish a reasonable ground for making a distinction between the different classes.