## The City of Atlanta *v.* Holliday *et al.*

1. Under the charter of the City of Atlanta, the discretion of its municipal authorities, within the sphere of their powers, is very broad, and this discretion is to be exercised according to the judgment of the corporate authorities as to the necessity or expediency of any given measure. It follows, therefore, that where these authorities are acting within the scope of their duties and exercising a discretionary power, the courts are not warranted in interfering, unless fraud or corruption is shown, or the power or discretion is being manifestly abused to the oppression of the citizen. In a case where it clearly appears that a threatened act on the part of the municipal authorities will result in such oppression, a court of equity may interfere to prevent the wrong.

2. It being conceded that the fee in that portion of the sidewalks and street involved in the present controversy is vested in the abutting lot owners, subject to the easement in the city for public uses, shade-trees upon the margins of these sidewalks are the property of the lot owners; and although it is undoubtedly within the power of the city to remove the trees as obstructions in any case if the public necessity or convenience so require, the city may not capriciously remove them when it palpably appears that no such necessity exists, and that the public convenience will not thereby be subserved; and to prevent the perpetration of such a wrong, an injunction will lie at the instance of the lot owners.

3. Under the evidence in the present case, the trial judge was warranted in concluding that there was neither a present nor probable disturbance of the surface of the sidewalks by the roots of the trees in question; that large poles of various kinds, constituting obstructions at least as great as these trees, were permitted to remain upon the margins of the walks; that the removal of the trees with these poles remaining would not appreciably contribute to the convenience or utility of the walks; and that there was not, under these circumstances, any such public necessity for removing the trees as would justify the extreme measures about to be re-

sorted to by the corporate authorities.  The judge below, having granted the injunction, will be presumed to have found that the threatened acts would amount to a gross and unwarranted abuse of the municipal power and discretion, and therefore this court will not overrule his discretion in the premises.

August 12, 1895.

Injunction.    Before Judge LUMPKIN.    Fulton county. May 27, 1895.

On the petition of Holliday and Nichols, the judge granted an injunction restraining the city from removing the shade-trees standing at or near the margin of the sidewalk in front of plaintiffs' property, on South Pryor street.   It was conceded at the hearing that the fee in the street was not in the city.   The petition, which was treated as an affidavit, sets forth the following.   Dr. Thompson, under whom plaintiffs hold title, dedicated, before the city was incorporated, a right of way or public highway afterwards designated by the city as Pryor street, simply for travel, and carrying only an easement in the public; the city afterwards exercising control over the highway as one of its streets.   At the time of opening said highway Dr. Thompson had planted thereon several· shade-trees, which now occupy the small space between the sidewalk and the outer curbing of the street proper.   The trees (four in number) are forty-five or fifty years old; they are valuable and a source of pleasure and comfort to the property-owners and the public, and are of intrinsic value to the abutting property; they are worth from $500 to $1,000 each; and their existence entered largely into the consideration of the purchase price paid by plaintiffs for their property, which has yearly enhanced in value by reason of their growth and existence; and without them the property would not be worth more than half the amount paid for it by the plaintiffs. The city's policy has ever been for the protection and encouragement of the growth of said trees, because they catch much of the dust and absorb considerable of the

summer's heat, etc.; and because the city by ordinances provided for a vacant space between the sidewalk and curbstones on all its streets, being left unpaved to aid in the growth and preservation of said trees. About seven years ago the city placed a pavement of rubble-stone on Pryor street and paved the sidewalks thereof, leaving a space between the outer edge thereof and the curbstone of the street proper, of about two to two and a half feet, for the benefit of said trees, prior to plaintiff's purchase; which led them to rely on the city's policy and purpose for their permanent protection and existence. The sidewalk paving was of brick, placed as a permanent improvement, and paid for by the owners of property abutting thereon, as required by the city's regulations. In January, 1895, upon the petition of some of the property-owners on Pryor street, the city passed a resolution providing again for the pavement of that street with cement tiling, to replace the brick pavement, the resolution providing that the tiling should extend the full width of the sidewalk. The purpose of the resolution amounted only to granting the petition for said paving and authorizing a contract thereon, and was not a resolution authorizing a paving where the necessity for it existed; and said act by the city is an abuse of its police powers and not in the scope of its chartered authority; and petitioners believed and contemplated that the tiling was to be handsomer and more ornamental, and was simply to replace the existing brick pavement on the sidewalk, and that it would occupy only the same space of the original pavement, leaving the margin for the benefit of the shade-trees; and when the city so authorized the pavement to extend the full width of the sidewalk, it exceeded the demand of the petitioners and exercised unlawful and unwarranted authority. In the recent paving of Pryor street, the city deemed it expedient to change the grade thereof, and the grade was lowered

at points three blocks north of plaintiffs' property and one block south thereof; and in lowering said grade it became necessary to dig up and remove the smaller shade-trees growing on the sidewalks at said points; and therefore the citizens along the street for the space of two blocks suffered the loss of the trees in front of their respective premises, which loss was unavoidable and necessary because of the change of grade. About February 1, 1895, when it was rumored that the city would probably remove the shade-trees for the full length of Pryor street between Mitchell street and Georgia avenue, plaintiffs appeared before the street committee of the city council to inquire of the disposition of the council, respecting the shade-trees on the street where the grade had not been changed, for at that time of the year they could have removed their shade-trees from the sidewalk on their private premises without endangering the life of the trees; and they were assured by said committee that the council would protect such shade-trees as were valuable and as added to the appearance of the street, and would destroy only such trees as the grading necessitated and such as were worthless. At that time plaintiffs could have removed the smaller trees without endangering their life; which, at this advanced stage of the season, it is impossible to do. At the instance and request of the property-owners living at the points where the grade had been changed and the trees necessarily removed, the street committee again convened and were prevailed on by said citizens that, because they had lost their trees, all the citizens along the street should suffer a like damage, and all the trees should be cut down for uniformity's sake. And said committee accepted from these parties the legal construction of the ordinance to mean that the shade-trees be removed; that as the resolution authorized the paving of the sidewalks the full width thereof, that necessarily implied that all the shade-

trees thereon should be destroyed.    Accepting this construction for no reason other than that stated, said committee reported to the general council on April 1, 1895, that all the trees on the street should be cut down ; and the council adopted the report.    The trees are not only an advantage to the adjacent property, but are a benefit to the city at large.    It is not necessary, either for public comfort, travel or safety, or for uniformity's sake, that they be destroyed.    They do not interfere in the least degree with the paving of either the sidewalks or the street proper.    The city has permitted trolley-car companies, telephone and telegraph companies, to erect large poles along the margin of the sidewalks of Pryor street, giving the whole street an unsightly and disgraceful appearance; the policy of the city has been and is to protect said poles; and the committee construe the ordinance as not contemplating the removal of the poles, because of the franchises held by said companies.    The trees relieve in large degree the unsightly condition of said poles, by hiding them from view.    Furthermore, the city has already completed the pavement around said trees on the sidewalk, and left a margin of a few inches around each tree, giving a basin for water, and not in any way interfering with the sidewalk.    The city has no right or property in the street, other than to protect it for the benefit of the public; it has no right to remove or destroy the trees unless it be necessary for the public good, safety or travel, or for the proper pavement and legitimate use of the street ; and no such necessity exists. Cutting them down is a reckless waste resulting in injury and damage to plaintiffs' property, which will be irreparable.    They have no adequate remedy at law, nor can they be compensated in damages.

For an understanding of the assignments of error made by the city, it is not necessary to set forth its answer nor the other evidence introduced.    These assign-

ments are: (1) That it was within the charter power
and lawful authority of the city to remove the trees at
its pleasure; and the court had no jurisdiction or au-
thority to restrain it from the exercise of such charter
power and authority.   (2) The grant of the injunction
interfered with the lawful power of the city to determine
for itself how much of the width of the sidewalk it
would pave and subject to use for travel.   (3) Plaintiffs
had no vested or property right to keep the trees on the
sidewalk as against the determination of the city to
remove them, the city having a dominant easement in
the whole width of the street, including the sidewalks.
(4) The court erred in construing the order or resolution
requiring the sidewalks on Pryor street to be paved their
full width, in the light of the exception in section 1038
of the city code of 1891, the city contending that such
sidewalks as those ordered on Pryor street were ex-
pressly excluded from the operation of said exception,
by the ordinance creating the exception, and that side-
walks of this class were not covered by that ordinance,
but by another ordinance known as section 1020 of the
city code, as amended so as to include cement blocks
amongst the material for sidewalks thereby prescribed.
Section 1020 of the city code was an ordinance adopted
in 1881, viz: " That all sidewalks which may hereafter
be laid within the city limits, shall be constructed of
either of the following materials: stone of not less di-
mensions than two feet by ten feet, asphalt, cement,
cement blocks, Augusta or Macon or river or other first-
class hard brick, in such manner as is prescribed in sec-
tion 647 of the code of the City of Atlanta for 1883."
(Section 647, just referred to, provided for notice to
property-owners to lay sidewalks, and on their failure
to do so, that they be laid by the city at the expense of
the owners, etc.)   Section 1038 of the city code of 1891
was an ordinance adopted in 1890, viz: "That all side-
walks hereafter laid in the city shall be laid the full

width, as required by section 726 of the city code of 1886." This was amended, October 8, 1891, viz: " That section 1038 of the code of 1891 be amended by adding the following: 'except the space of from twelve to twenty-four inches be left around all shade-trees.'" It was further amended, March 22, 1893, viz: " That section 1038 be amended by adding after 1886: ' except where the sidewalk is 10 feet wide, and parties wish to put down expensive sidewalks of granite or other material, where the walk may be reduced to $7\frac{1}{2}$ feet wide, and the parties be then required to sod the border and keep it in good condition so that it will not wash ; it being understood that this is in no case to apply to the law as it now stands in regard to laying of brick sidewalks.'" On December 4, 1894, was approved an ordinance amending section 1020 of the city code of 1891, so as to include cement blocks amongst the prescribed material for sidewalks included in said ordinance. In evidence also was section 1041 of the city code, viz: " Any person who shall wilfully destroy any shade-trees, or who shall fasten any horse or animal to any shade-tree, or fasten or leave such horse or animal close enough to injure any shade-tree in the city limits, shall pay a fine," etc. Another section makes it the duty of property-owners to keep all shade-trees on the sidewalks trimmed up eight feet from the ground, etc.

It was conceded that the work at and around the trees was finished as alleged by plaintiffs; but the city contends that this was so done on account of the pendency of the injunction proceedings.

J. A. ANDERSON and F. COLVILLE, for plaintiff in error.
SIMMONS & CORRIGAN and KING & SPALDING, *contra.*

ATKINSON, Justice.

The statement of facts contained in the official report is sufficient to a clear understanding of the questions made in this case.

1. A municipal corporation is a minor State. Through its proper officials, it exercises those attributes of sovereignty which the legislature, for the convenience of the State at large, in the administration of purely local affairs confers upon such a corporation. It possesses the power to legislate within certain boundaries touching the personal and property rights of citizens resident within its limits. It may tax or seize to public uses the private property of the citizen, under the limitations imposed by its charter. Necessarily, in dealing with the complex questions which from time to time arise in the administration of public local affairs, a broad discretionary power must be exercised by it touching such matters. The maintenance of public highways, of sewerage, of systems of water-works and the like are subject to the municipal control according to the wise discretion of the municipal authorities. Liberal presumptions will be indulged in favor of the acts of municipal authorities acting within the range and scope of their power. The law invests them with this discretion, but it invests them with no arbitrary power to be capriciously exercised. As long as an official public act can be upheld as being within the exercise of a discretionary power conferred by the charter, the will of this legislative body is supreme, and the courts have no power to interfere. But if, under the guise of a public authority, a municipal body should so legislate, and so execute the laws framed by it, as to deprive any citizen, unheard, of a substantial right, either of person or property, such citizen is not without remedy, but may appeal to the courts for redress of an injury committed, or for remedy against an impending wrong. To justify interference upon the part of the courts, however, it must appear that the municipal corporation has passed the boundary of legislative or judicial discretion, and is exercising its municipal powers arbitrarily to the injury and oppression

of the citizen.    If such a case be made, we know of no reason why the courts should not interfere.    There is certainly none under our system of government, where no man, however humble he may be, can be deprived of life, liberty or property at the arbitrary will of the State, and against the law of the land.

2, 3.  Where the fee in the street itself is vested in the city authorities, as was the case in *Castleberry* v. *City of Atlanta,* 74 *Ga.* 164, an individual acquires no such personal right in the preservation of shade-trees standing thereon as would enable him to interfere by injunction with the city authorities in the exercise of a discretionary power of removing such trees as obstructions upon the public streets.    He has a right to the maintenance of the street as a public highway, unobstructed, but he has no legal right to the continuance in the street of a shade-tree after the city authorities have concluded to remove it as an obstruction.    In such cases, the control of the streets by the city authorities is absolute.    In the present case, however, it is conceded that the fee to that portion of the street and sidewalks in controversy is vested in the abutting lot owners.    The city has upon them an easement in the nature of a right of way.    The city authorities, in the first instance, by virtue of the dominant servitude imposed in favor of the city by the owners of the land, would have had the right to appropriate absolutely the entire width of the whole street to the uses of a public highway, removing therefrom all shade-trees or other obstructions that might have been therein.    It had the power to elect the extent to which this servitude should be imposed, and that part of the street not absolutely appropriated by the city under its easement as a right of way, remained in the abutting lot owners by virtue of their ownership of the fee.    When, therefore, the city authorities, upon the opening of this street, allowed these trees to remain, that portion of the

street actually covered by their trunks was unappropriated by the city and remained in the lot owners. The trees growing upon those portions of the street not appropriated, were the private property of the lot owners, but held subject to the exercise by the city of its right to extend its dominant easement over the ground occupied by them, whenever, in the judgment of the city authorities, it became necessary for the public necessity or convenience that this be done. If, to meet any demand of public convenience or necessity, the city authorities, in their discretion, saw proper to cause the removal of these trees, by appropriate proceedings, this might be done. But to justify such an act, there must be a public necesssity. Private property may not be taken for public uses upon mere considerations of public convenience. The public convenience which will justify such a proceeding must amount to a public necessity. Whether a case of public necessity arises, as we have before observed, is a matter primarily for determination by the city authorities. If they exercise a wise discretion in regard to the matter, the courts are without power to control them. In the present case, aside from all considerations of sentiment, it would seem to us that the circuit judge was fully justified in granting the injunction sought, to operate until the question of public necessity can be properly determined. For many, many years these trees had stood upon the sidewalks in such a position as not to interfere with or impede public travel. They were ornamental, added greatly to the value of the homes of these abutting lot owners and to their enjoyment of these homes. They had a private personal interest in retaining them. According to the admissions contained in this record, they owned the land upon which these trees grew. The municipal authorities concluded to remove them. Upon the question as to whether that removal was justified upon grounds of public ne-

cessity, these complainants were not heard, nor given an opportunity to be heard; and when challenged in regard to their right so as to proceed, the municipal authorities seek to justify their conduct, first, upon the ground they had so decreed it, and second, that they were not answerable to the citizen for the wisdom or propriety of that decree. We do not agree to this proposition, and do not concede to the municipal authorities a purely arbitrary power in dealing with the public streets where the interests of a private individual are likely to be affected. The next contention is, that even though the official act of the authorities was subject to challenge by an individual whose property rights were being invaded, yet the proposed action of the municipal authorities was within the exercise of a discretionary power; that they had exercised a wise discretion in regard to this matter, and therefore were not subject to control by courts of equity. It was further contended by the municipal authorities that the roots from these shade-trees were likely to disturb the even surface of the newly laid sidewalk. It appears that the particular trees, to enjoin the removal of which this suit was brought, grew at a place where, in grading the street, it had been filled up several feet, so that the roots of the trees necessarily remained a long distance below the surface of the sidewalk, at too great a distance to produce the injury apprehended by the city authorities; and we think the circuit judge rightfully held that this circumstance presented no such consideration of public necessity as would justify the removal of the trees. Upon the entire evidence submitted, the circuit judge does not seem to have taken the views maintained by the city; else he had denied the injunction. Granting the injunction, we are simply called upon to say whether in so doing, under the evidence so submitted, he abused his discretion. It appears from the record in this case that

the trees in question are so situated as not to amount in any sense to an obstruction of a public highway. It appears that they are situated in a narrow vacant space between the outer curbing of the driveway of the street and the outer curbing of the sidewalk. At all events, along this street there have been placed a great many telephone, telegraph and trolley-poles; and the proposition is to remove these trees upon the ground of public necessity as obstructions to travel, and to permit the poles mentioned to remain. In other words, a shade-tree is regarded as an obstruction, when a bare pole, not quite so large in circumference as the shade-trees, but very much less ornamental, is not regarded as an obstruction to travel. Doubtless this paradox found lodgment in the judicial mind; and when the circuit judge came to inquire as to what motive influenced the public authorities to their action in the premises, he concluded that there was no real public necessity for the removal of these trees; that the measure was purely arbitrary, hurtful to the citizen, and with no corresponding advantage to the public. This is the view justified by the evidence as we find it in the record, and we presume that upon these considerations the injunction was granted. Doubtless the circuit judge held as we do, that courts of equity engage with great reluctance in the regulation of matters which appertain to the municipal conscience, but the apparent harshness of the present proceeding we think makes the extreme case which justifies judicial interference.    *Judgment affirmed.*