**CAMERON et al. v. EARNEST et al.**

No. 8540.

Court of Civil Appeals of Texas. San Antonio.

Nov. 5, 1930.

Rehearing Overruled Jan. 21, 1931.

Don A. Bliss, of San Antonio, E. A. McDaniel, of McAllen, and Claude Pollard, of Austin, for appellants.

R. L. Bobbitt, of Austin, Geo. G. Clough, of Houston, Grade Callaway, of Edinburg, and B. D. Kimbrough, of McAllen, for appellees.

COBBS, J.

The state of Texas, intervener, D. C. Earnest, J. E. Berry, P. W. Perkins, B. S. Graham, and A. L. Nelson, all the plaintiffs, except the state of Texas, intervener, claiming to be taxpaying citizens of Hidalgo county, Tex., brought suit against A. W. Cameron, individually, and as county judge and member of the commissioners' court, and against W. D. Chadick, Robert Henderson, S. M. Hargrove, and W. L. Lipscomb, individually and as members of the commissioners' court; and also against O. Em Jones, individually, and as tax collector of Hidalgo county, Tex., G. W. Walton, as county treasurer of Hidalgo county, Tex., O. T. Liles, as county auditor of Hidalgo county, Tex., and J. C. Epperson, as defendants.

The plaintiffs prayed for a writ of injunction restraining and prohibiting the carrying out of a certain contract between the commissioners' court of Hidalgo county and J. C. Epperson; and for judgment rendering said injunction perpetual and cancelling and declaring void said contract. They also prayed for judgment against said Epperson for the sum of $20,000, and also for judgment against the members of the commissioners' court and O. Em Jones for said amount.

All the defendants filed responsive pleadings and answers.

The case was tried by the court without a jury, and judgment rendered in favor of appellees against J. C. Epperson.

The contract between the commissioners' court and Epperson recited the following matters, to wit:

"Whereas, the Commissioners' Court of Hidalgo County, Texas, did on December 31, 1928, enter into a contract with J. C. Epperson, a practicing attorney of said County to collect all delinquent state, county and political subdivision taxes, therein agreeing to pay said attorney fifteen per cent of all such taxes, penalties and interest as his compensation, and did thereafter on, to-wit: the 1st day of April, 1929, enter into a contract with Fidelity Abstract & Title Company of Edinburg, Texas, for the furnishing of lists of owners and holders on each tract of land delinquent for such taxes and to make necessary maps and plats therein agreeing to pay said Abstract Company ten per cent of all such taxes, penalties and interest as its compensation; and

"Whereas, the said J. C. Epperson, and the said Fidelity Abstract & Title Company have tendered back their said contracts and requested this Court to relieve them from said contracts and cancel the two aforesaid contracts, without further liability on either of the parties thereto from this date and said contracts have accordingly been cancelled and annulled; and

"Whereas, the said J. C. Epperson has agreed to perform all the services provided for in the two aforesaid contracts for and in consideration of an amount equal to twenty-five per cent (25%) of all State and County Taxes, penalties and interest, delinquent and to become delinquent during the next year and in addition thereto has agreed to bring the Plat Book or Block Map system, of this county down to March 1, 1930, without any additional charge therefor and without any charge therefor whatsoever."

Simultaneously with said Epperson's and Fidelity Abstract & Title Company's throwing up of their separate contracts with the commissioners' court, the said Epperson assumed the performance of both contracts, as shown by the above quotation.

Though the findings of the court and the briefs of the parties are very lengthy, the questions involved are short enough. It involves largely the powers of the commissioners' court to make the contract. The statute gives the court the power to make such a contract. As a condition precedent, however, it must first give the county attorney a notice of thirty days in which to bring the suit.

There are so many assignments and propositions covering the same subject, we shall not discuss them separately, but have passed upon and considered all of them.

The county attorney Buchanan was notified in writing thirty days before December 31, 1928, to bring suits for delinquent taxes, and he appeared before the commissioners' court and refused to bring the suits saying that it would cost him too much. He was re-elected as county attorney at the November, 1928, election, and his new term of office began January 1, 1929, and therefore it was not necessary to give him another notice. The commissioners' court was authorized to make the contract with Epperson, with refer-

ence to the compensation to be paid for collecting taxes that would be delinquent on the 1st day of February, 1930, during the life of, but after the date of, the contract.

■■ While the contract might be excessive and unreasonable in its terms for the work to be done and the service to be performed, it is not so excessive as to raise the presumption of fraud. To entitle Epperson to his compensation, it was not necessary that Epperson should bring suit on each tract of land, but the commissioners' court had the right to pay him a commission on all the delinquent taxes paid after the contract was entered into. The contract does not obligate him to enforce collection by suit, but provides that he shall assist the county attorney of Hidalgo county in the collection of all taxes delinquent and to become delinquent on February 1, 1930, and obligated Hidalgo county and the state to pay, through the tax collector, a sum of money equivalent to 25 per cent. of all delinquent taxes. The contract did not confine the abstracts to be prepared to lands upon which taxes were delinquent and which were assessed as unknown or unrendered. Epperson's compensation for the preparation of said abstracts was not made contingent upon the payment of delinquent taxes on lands on which said abstracts were made prior to payment of taxes. The contract did not limit Epperson's compensation to a percentage of state and county taxes then delinquent on real estate, as contemplated by law, but fixed and measured said defendant's compensation by a percentage of all taxes collected by the tax collector of Hidalgo county, Tex., after September 16, 1929, and becoming delinquent up to February 1, 1930, thereby including, not only delinquent taxes upon real estate, but those upon personal property and those of insolvent taxpayers, which plaintiffs claimed was not authorized by law.

The contract with the defendant Epperson being for the making of complete abstracts of lands in said county and for the collection of delinquent taxes, it did not make any difference whether these taxes became delinquent after said contract was made or before. Articles 7335, 7344, R. S. 1925; Cherokee County v. Odom, 118 Tex. 288, 15 S.W.(2d) 538; Commissioners' Court v. Wallace, 118 Tex. 279, 15 S.W.(2d) 535.

■ Where the commissioners' court acted upon a matter within its power and jurisdiction, in the absence of fraud, no court has the right to set its decision aside. It is final and free from controversy. No other court has the right or power to interfere with or control the discretion of such court. McQuillin's Municipal Corporations, vol. 1, pp. 975, 976; 7 Ruling Case Law p. 942, § 18; 15 Corpus Juris, p. 556, § 252; City of Austin v. Nalle, 85 Tex. 549, 22 S. W. 668, 960;

Lockwood v. Portland (C. C. A.) 288 F. 480; Dailey v. New Haven, 60 Conn. 314, 22 A. 945, 14 L. R. A. 69; Seward v. Town of Liberty, 142 Ind. 551, 42 N. E. 39; Wells v. Atlanta, 43 Ga. 67; Semmes v. Columbus, 19 Ga. 471; City of Atlanta v. Holliday, 96 Ga. 546, 23 S. E. 509; Brown v. Sebastopol, 153 Cal. 704, 96 P. 963, 19 L. R. A. (N. S.) 178; Sacramento County v. Southern Pacific Co., 127 Cal. 217, 59 P. 568, 825; Fleener v. Litsey, 30 Ind. App. 399, 66 N. E. 82; Shinn v. Cunningham, 120 Iowa, 383, 94 N. W. 941; Disbrow v. Board of Supervisors, 119 Iowa, 538, 93 N. W. 585; Hot Springs v. Curry, 64 Ark. 152, 41 S. W. 55, 56; Board of Com'rs of Vigo County v. Davis, 136 Ind. 503, 36 N. E. 141, 22 L. R. A. 515; In re First Nat. Bank of Hillsboro, 25 N. D. 635, 146 N. W. 1064, L. R. A. 1915C, 386; Hays v. Ahlrichs, 115 Ala. 239, 22 So. 465; Lancaster County v. Lincoln Auditorium Ass'n, 87 Neb. 87, 127 N. W. 226.

There are no facts stated by which the court can determine whether or not the compensation that defendant Epperson may receive will be grossly excessive and unconscionable or unreasonable and amount to a fraud. Kissinger v. Hay, 52 Tex. Civ. App. 295, 113 S. W. 1005; Seward v. Town of Liberty, 142 Ind. 551, 42 N. E. 39; 43 C. J. p. 310.

The court erred in his alternative conclusion that the contract could not legally include the taxes for the year 1929 to become delinquent as of February 1, 1930. Cherokee County v. Odom, supra; Commissioners' Court v. Wallace, supra.

■ The court erred as a matter of law in holding the amount contracted to be paid was so grossly excessive in proportion to the work to be done that it shows an abuse of discretion and ought not to be enforced. If the price contracted to be paid was excessive in amount, that would not mean the entire contract was void, because the court acting within its power and discretion had the right to enter in the contract.

The testimony showed that over one-half of the county was what was called bulk stuff, and the block and plat map system did not cover this at all, and all of this would have to be platted and mapped by Epperson showing the owner of each tract, and a sufficient description to identify each tract on the ground would have to be set forth by Epperson, in order to make a complete abstract thereby showing what tracts of land in the county were delinquent and which were not delinquent. And in many instances it would be necessary, after this survey was made, for the commissioners' court to convene and reassess the lands for all the back years. Epperson had to determine how much of the estimated back taxes of $1,150,000 was composed of double assessments, erroneous assessments, assessments on exempt property, false

assessments, and everything of that kind. The testimony also showed the condition of the San Salvador del Tule, a survey of 72 leagues, which had never been partitioned, the Ejidos of Old Reynosa, where it would be impossible to get the tax rendition without a plat or map, and also as to the condition of porcion 47 and other porciones west of Mission.

J. C. Epperson testified as to what was meant by a complete abstract of the land titles in the county, and testified at great length as to what work he had to do, in addition to that already done. Among other things, he testified: "That he did not know of a single tract or Porcion in this County in which there were no taxes delinquent on lands not described before there were any subdivisions and for some years on all of it; as an example of this that there was the Llano Grande Grant, which he thought was subdivided about as soon as any other grant in the County, where the American Rio Grande Land & Irrigation Company had carved out what is known as the Capisallo, Campacuas and Palm Gardens subdivisions; and that there is a portion of said grant that has never been subdivided yet, but before any of those subdivisions were made, there was much land in the grant delinquent and the taxes are delinquent yet; that you could not collect those taxes without working out the ownership of the entire Llano Grande grant and apply that to these lists he had made up and work it out by a process of elimination; that all these things were included in the making of proper abstracts."

He testified also as to Los Ejidos which had never been subdivided, and the entire ownership had to be worked out in order to find what each one owned and also the San Salvador del Tule, a survey of 72 leagues and also as to porcion 47, the porciones west of Mission, and a great deal more. He testified that actual surveys would have to be made, in many instances before it could be determined how much land a person owned in these grants; and that it would be necessary in many instances for the commissioners' court to convene after the abstracts had been made up and reassess the tracts of land before any sufficient description of these lands could be made. Epperson's testimony on this question was very lengthy.

The trial court refused to allow Epperson to prove how much it would reasonably cost him to do the work, though prior to this ruling by the trial court he had gotten in testimony showing the payment of $500 per month for the use of an abstract plant, and also paid, in salaries to four lawyers and one engineer, $1,450 per month. The proof showed that there were eleven employees constantly engaged in work, outside of the said Epperson, and that these salaries proved to be paid included only five of them.

In the face of this testimony and the amount of work done and to be done by Epperson, it is hardly possible to state that the contract was so excessive as to be held a void contract. It may be that the contract might have been reformed, but the doctrine of reformation is not involved in this case.

■ Again, we think the court erred in not allowing Epperson to testify under the peculiar circumstances of this case, the reasonable cost incurred by him in performing his contract. J. C. Epperson expected to show by his testimony that up to the time of the trial the said Epperson had been paying out as salaries and for work done and for other necessary expenses in the performance of the contract the sum of at least $3,000 per month, and that this expense was a reasonable expense, and, further, that the most difficult and costly part of the work had yet to be done in getting the data necessary to bring successful tax suits for the collection of taxes delinquent on lands in what is known as the "bulk" acreage of the county, and which would reasonably cost him more per month than the work he had already had done, because it would be necessary for him to have a great deal of surveying on the ground done in this bulk acreage, and to work out undivided interests of tenants in common to enable him to get correct descriptions of lands and make proper parties to the suits for the purpose of bringing proper suits for the recovery of taxes delinquent on the bulk acreage lands, and to complete the block map of the county, not only for his own use in bringing the suits, but for the future use of the county and state. And defendant Epperson expected to prove by his testimony that all these expenses he would have to incur would be reasonable in amount and would be necessary, and he expected to prove by his own testimony in this connection that the utmost profit that could be made out of his performance of the contract, after paying all the reasonable expenses that would have to be incurred by him, and not including his own services, would not exceed $15,000 or $20,000 for his own time and labor and profit.

On December 31, 1928, J. C. Epperson made a contract with the commissioners' court of Hidalgo county, Tex., to assist the commissioners' court in making the necessary reassessments and to aid the county attorney in bringing suits for delinquent taxes. He was to receive 15 per centum of the delinquent taxes actually collected as his compensation for this. On April 1, 1929, the commissioners' court of Hidalgo county made a contract with the Fidelity Abstract & Title Company for the furnishing of lists of owners and lienholders on each tract of land delinquent for taxes

and to make the necessary abstracts, maps, and plats therein, for which they allowed said abstract company a compensation of 10 per centum of the taxes actually collected.

The evidence showed that this plan of collecting delinquent taxes was not working well, due principally to the fact that the abstract company was not working competent people, and Epperson and the Fidelity Abstract & Title Company appeared before the commissioners' court and surrendered their several contracts, Epperson taking over the performance of both, with additional work, for the same aggregate compensation, to wit, 25 per cent. of the taxes actually collected. That is to say, he agreed to make a complete abstract of all property in said county assessed and unknown and unrendered for purposes of taxation, and upon which taxes were delinquent, the said abstract to cover and include all delinquent taxes of every character from December 31, 1908, up to and including all such taxes that might become delinquent on February 1, 1930, same to include all state and county taxes and taxes of all political subdivisions of Hidalgo county whose taxes are collected in the office of the county tax collector of said county, and he agreed to revise and complete the map system of said county already in existence and bring it down to date free of charge.

And Epperson was to assist the county attorney of Hidalgo county in the collection of all delinquent taxes that were then delinquent and to become delinquent on February 1, 1930, and the said Epperson and his assistants were authorized to do anything and everything authorized by law in that behalf in rendering assistance to the county attorney, but at his own expense.

The trial court expressly found that there was no collusion whatsoever between Epperson and Buchanan, the county attorney; and the trial court likewise found that there was no partnership existing between Epperson and Cameron, the county judge, at the time the contract was made.

This finding disposes of any fraud in making the contract. City of East St. Louis v. U. S. ex rel. Zebley, 110 U. S. 321, 4 S. Ct. 21, 28 L. Ed. 162; Lockwood v. Portland (C. C. A.) 288 F. 480; Wells v. Atlanta, 43 Ga. 67; Fleener v. Litsey, 30 Ind. App. 399, 66 N. E. 82; Shinn v. Cunningham, 120 Iowa, 383, 94 N. W. 941; Disbrow v. Board of Supervisors, 119 Iowa, 538, 93 N. W. 585; Semmes v. Columbus, 19 Ga. 471; City of Atlanta v. Holliday, 96 Ga. 546, 23 S. E. 509; Brown v. Sebastopol, 153 Cal. 704, 96 P. 963, 19 L. R. A. (N. S.) 178; Sacramento County v. Southern Pacific Co., 127 Cal. 217, 59 P. 568, 825; Hot Springs v. Curry, 64 Ark. 152, 41 S. W. 55, 56; Board of Com'rs of Vigo County v. Davis, 136 Ind. 503, 36 N. E. 141, 22 L. R. A. 515; In re First Nat. Bank of Hillsboro, 25 N. D. 635, 146 N. W. 1064, L. R. A. 1915C, 386; Hays v. Ahlrichs, 115 Ala. 239, 22 So. 465; Lancaster County v. Lincoln Auditorium Ass'n, 87 Neb. 87, 127 N. W. 226; 44 Corpus Juris pp. 121, 122, § 2224; 44 C. J. p. 130; Harrold v. Huntington, 74 W. Va. 538, 82 S. E. 476; Sayles v. City of Abilene (Tex. Civ. App.) 290 S. W. 239; City of Austin v. Nalle, 85 Tex. 520, 22 S. W. 668, 960.

The briefs are full of the detailed facts and do not show any fraud, or that the compensation provided for was so unreasonable and excessive as to make the contract void. There are many errors assigned, and we have considered all the assignments. It is not necessary for us to pass on each one separately, but it is sufficient for us to hold that the trial court erred in its judgment, and therefore the judgment is reversed, and the cause remanded for another trial.

On Motion for Rehearing.

The motion for rehearing of all the parties hereto calls to our attention that we have passed upon all the facts as well as decided all questions of law involved in favor of appellants. It follows as a natural consequence from what we have said that the judgment should have been rendered for all the appellants instead of being simply reversed, because all the issues were by us settled in favor of appellants. It is therefore ordered and adjudged that the judgment rendered by the trial court is hereby reversed and here now rendered in favor of all the appellants against appellees.

Appellees' motion for rehearing is overruled, and the judgment reversed and rendered.