## EDMISTON et al. v. STRICKLAND, EWERS & WILKINS.

No. 10315.

Court of Civil Appeals of Texas. San Antonio.

June 29, 1938.

Rehearing Denied Nov. 2, 1938.

H. H. Dunn, of Edinburg, and Bliss & Daffan, of San Antonio, for appellants.

R. D. Cox, Jr., of Mission, for appellees.

SMITH, Chief Justice.

In the year 1929 J. C. Epperson entered into a contract with Hidalgo County to

collect delinquent taxes owing to the County, upon a commission basis. The validity of that contract was afterwards litigated in the courts. Cameron v. Earnest, Tex. Civ.App., 34 S.W.2d 685; Tarpley v. Epperson, Tex.Civ.App., 50 S.W.2d 919; Id., 125 Tex. 63, 79 S.W.2d 1081; State v. Epperson, 121 Tex. 80, 42 S.W.2d 228.

In performing his contract with the County, Epperson employed or borrowed money from various persons and agencies, including Prentis P. Edmiston, Wade H. Bliss, and Edwards Abstract Company, hereinafter called plaintiffs, who, in the early part of 1933, brought suits upon their claims against him, for $697.70, $5,-262.23, and $1,139.48, respectively. At the same time the plaintiffs had writs of garnishment issued against Tarpley, the county tax collector, to impound funds, then assumed to be owing by the county to Epperson on said contract, to be subjected to the payment of plaintiffs' claims. Subsequently plaintiffs impleaded American State Bank & Trust Company of Edinburg in their suit against Epperson, seeking to charge it with their claims against him, on the theory that it had converted to its own use the funds owing by the county to Epperson.

In the meantime, on January 12, 1934, Epperson sold his contract with the county, and all his rights thereunder, to said Bank & Trust Company, and on the next day, January 13th, the Bank in turn transferred and assigned the said contract back to the county, along with an acquittance of the county from further liability thereunder.

In purchasing the contract from Epperson the Bank took cognizance of the pending garnishment proceedings, as well as plaintiffs' suits on their claims against Epperson, and withheld, out of the agreed purchase price to be paid Epperson, the sum of $2,250 as a protection against the claims of plaintiffs. We must assume, in view of a directed verdict, that this sum was arrived at by prorating the amount of said purchase price among Epperson's creditors, according to the amounts of their claims, whereby said sum of $2,250 was ascertained as plaintiffs' portion. The sum was covered into a cashier's check issued by the bank and made payable, and thereupon delivered, to the bank's attorneys, Strickland, Ewers and Wilkins, hereinafter called defendants, under the following stipulations, evidenced by that firm's letter to Epperson:

"Edinburg, Texas, January 12, 1934
"Mr. J. C. Epperson
"Edinburg, Texas
"Dear Sir:
"We are holding in trust the sum of $2,250.00 in the form of Cashier's Check of the American State Bank & Trust Company, Edinburg, Texas, for the purpose of indemnifying the American State Bank and Trust Company against loss in connection wth certain garnishment suits heretofore filed by Wade H. Bliss, Edwards Abstract Company and Prentiss Edmiston against H. Tarpley, Garnishee. In the event any judgment is recovered against Mr. Tarpley in either or all of these cases, we are authorized to use this amount in payment thereof. Otherwise to hold same subject to your order for the purpose of settling the claims of the respective plaintiffs in these cases. * * *
"Very truly yours,
"Strickland, Ewers and Wilkins
"By J. F. Ewers."

Plaintiffs prosecuted their suits against Epperson and recovered judgments against him in the sums prayed for, but judgment was denied them as against the Bank, and their garnishment suits against the tax collector went against them. That judgment was afterwards affirmed by this Court and writ of error was dismissed for want of jurisdiction by the Supreme Court. Bliss v. American State Bank & Trust Co., Tex.Civ.App., 90 S.W.2d 630. The controversy between all the parties interested was also litigated, in various aspects, in the following reported cases: Cameron v. Earnest, Tex.Civ.App., 34 S.W.2d 685; Tarpley v. Epperson, Tex.Civ.App., 50 S.W.2d 919; Tarpley v. Epperson, 125 Tex. 63, 79 S.W.2d 1081; State v. Epperson, 121 Tex. 80, 42 S.W.2d 228.

In the meantime, the bank having transferred to Hidalgo County the delinquent tax contract it had acquired from Epperson, the latter instituted a suit to rescind the sale of the contract to the Bank, alleging that he had been defrauded by the Bank and the County in the transaction, which movement had its repercussions in a case pending on writ of error in the Supreme Court, involving the validity of the original contract between Epperson and the County. Tarpley v. Epperson, Tax Collector, et al., 125 Tex. 63, 79 S.W.2d

1081. About that time, also, one Bell brought suit against the Bank in the federal court at Brownsville, alleging that he was a creditor of Epperson, and that the Bank, having converted Epperson's funds, was liable to Bell on said account

In this muddled situation it appears that Epperson, for a consideration of $2,250 in cash, agreed to and did dismiss his suit against the Bank for rescission, and, further, agreed to and did procure Bell to dismiss his said suit in the federal court against the Bank at a cost of several hundred dollars paid to Bell by Epperson. This settlement was negotiated by Epperson, through long distance telephone conversation, and his attorney on the ground, on the one hand, and defendants, as attorneys for the Bank, on the other. And defendants paid Epperson the agreed consideration of $2,250 in the transaction by cashing said cashier's check for that amount and turning it over to Epperson's attorney, who, after paying $100 of it to Bell's attorney and a substantial part of it to Bell—in order to get Bell's suit dismissed—paid over the balance to Epperson.

Thereafter, plaintiffs brought this suit against defendants to recover the amount of said cashier's check, $2,250, upon the ground that said fund was deposited with and held by defendants in trust for plaintiffs, to be applied towards payment of Epperson's debt to them in event the Bank was relieved of liability to them and their garnishment suits failed; that that contingency had transpired, requiring defendants to account to plaintiffs for said fund. Upon a trial judgment was rendered, upon directed verdict, denying any recovery to plaintiffs, who have prosecuted writ of error. In the original disposition in this Court the judgment was affirmed, and this opinion, written in overruling plaintiffs' motion for rehearing, will be substituted in lieu of the original opinion.

■ It is appropriate to state at this juncture that there was evidence tending to show, and we must give effect to it in view of the directed verdict, that at one time Epperson delivered to plaintiff Bliss the letter from defendants to Epperson of January 12, 1934, and told him to take it to defendants and "get the money" thereon; that Bliss tendered or showed the letter to defendant Strickland and demanded the money of him, and that Strickland thereupon offered to pay over the money to Bliss upon condition that the plaintiffs

dismiss their garnishment proceedings against Tarpley and their suit against the Bank, but Bliss declined to accept the money except "on account." It should be added in this connection that this demand by Bliss was made while plaintiffs' suits against Epperson and the related garnishment proceedings were still pending. We conclude, therefore, that said demands and counter propositions cannot be given effect upon the rights and liabilities of the parties to the suit. In the first place, the parol demand, of one of the plaintiffs, upon defendant Strickland for the entire sum on behalf of the three plaintiffs, even though made with the absent Epperson's verbal authority, was not made with such formality as to constitute such delivery, if made, a disposition of the fund "subject to" the owner's "order," as provided in the written authority. For, had Strickland paid over the sum to Bliss it would have been subject to Epperson's possible repudiation of the authority claimed by Bliss to collect; it would have been subject to a demand of Bliss' co-plaintiffs for an accounting to them for their parts paid Bliss; it would have been subject to the right of their client, the Bank, to demand an accounting to it in event the unsettled litigation, including the garnishment proceedings, had thereafter gone against it. Defendants were not required to incur all those hazards upon Bliss' admittedly premature demand, at that time, for the whole sum to be paid him unconditionally, and without recourse.

■ Plaintiffs urge the fact, which must be assumed in the face of a directed verdict, that Epperson did not know he was being paid off—for dismissing his suit, and that of Bell, against the bank—with the proceeds from the cashier's check; that is, with his own funds. Plaintiffs present this fact, and consequent conclusion, as evidence that Epperson intended that the cashier's check be applied to the satisfaction of plaintiffs' claims against him, and assumed that it had long since been so applied; that he laid no claim to it, because it belonged to plaintiffs. As stated, there was evidence to support the facts claimed, and we must assume those facts to be true in determining this appeal. But we are unable to give them controlling effect in this appeal. The ultimate, and maximum, effect seems to be that if the bank, through defendants, bought off Epperson with his own money, as plaintiffs

contend, then Epperson alone can complain thereat, and plaintiffs still have their judgment against him. We cite no authority for this conclusion, for none in point is cited, and we have found none. It must stand as a first impression.

 We conclude that, after all, the rights of the parties must be determined from the language of the letter of defendants to Epperson on January 12, 1934, keeping in mind, of course, the situation of the parties at the time. Summarizing the facts of that situation, Epperson owed plaintiffs for their services and advancements in connection· with his delinquent tax contract with the county, and they had sued him thereon for separate . amounts aggregating approximately $7,000. He had sold his contract to the bank, which in turn assigned it, with its guaranty, to the county. Plaintiffs impleaded the bank in their suits against Epperson, and, further, procured writs of garnishment against the county tax collector to impound funds out of the consideration the bank was to pay Epperson for said contract. In settling with Epperson the bank withheld $2,250 of the amount it was to pay him, but, by agreement of the parties, put the amount in the form of its cashier's check, payable to defendants (its attorneys), to be by them held in accordance with the directions contained in their letter of that date to Epperson, as set out above. The fund actually belonged to Epperson, but was withheld from him, for the time being, by the bank, as its protection against a potential liability contingent upon the garnishment proceeding, defendants being the trustees of the fund, for the benefit of the owner, pending the outcome of that proceeding. Defendants were not authorized to pay over that fund to any other person than its owner, Epperson, subject to whose sole order they were obligated, in the agreement, to hold it. The recital in the agreement that the fund was intended alternatively for "the purpose of settling" plaintiffs' claims against Epperson. did not empower the defendants to appropriate the fund to that purpose directly, and without the owner's order. That recital was no more than descriptive, or surplusage, and certainly would not control over the express condition that in the event no judgment was recovered against the garnishee, Tarpley, defendants should hold the fund "subject to" the owner's "order." It would not authorize the defendants to disregard the latter provision and disburse the fund directly, upon their own arbitrary adjudication of the rights and equities of Epperson and his creditors. Defendants were bound strictly to the terms of their obligations, to-wit: the protection of the bank against a named risk, and that risk having passed, their first obligation was to hold the fund subject to the order of Epperson the owner, to whom alone they were liable for a breach of that obligation.

The judgment is affirmed.