HUDSPETH <em>v.</em> HALL <em>et al.</em>

1. After the proper officials have, in the exercise of discretionary powers conferred upon them, authorized the establishment and maintenance of a public ferry, the expediency or wisdom of their action in the premises can not be brought in question by the proprietor of another public ferry previously established in the immediate neighborhood, notwithstanding the operation of his ferry may in consequence become unprofitable.

2. The decision rendered by this court when the present case was before it at the March term, 1900, did not preclude the owners of the new ferry from taking proper steps to secure a franchise authorizing the establishment thereof as a public ferry.

Argued December 7, 1900. — Decided March 25, 1901.

Refusal of injunction. Before Judge Sheffield. Baker superior court. September 22, 1900.

*Bower & Bower* and *Hawes & Hawes,* for plaintiff. *D. H. Pope & Son, A. S. Johnson,* and *Benton Odom,* for defendants.

LUMPKIN, P. J. This case was before this court at its March term, 1900. See 111 *Ga.* 510. As appears from the opinion delivered by Mr. Justice Little, the litigation in the trial court had resolved itself into a controversy between Mrs. Hudspeth and R. L. Hall, concerning the right of the latter to operate a ferry over Flint river at a point a short distance below that at which she had established a public ferry. He contended that, as he was the

owner of the land on both sides of the river at the point in question, he had a right to conduct a ferry for the accommodation of the public, notwithstanding he had not been granted a franchise which authorized him so to do. We held to the contrary, and affirmed the judgment of the lower court, with direction that the trial judge so amend his order granting an injunction as to afford Mrs. Hudspeth full protection in the premises. Our decision was rendered July 13, 1900. On July 28, R. L. Hall joined with W. H. Hall in presenting to the board of county commissioners of Baker county a petition in which they represented themselves to be the owners of "the land on both sides of the Flint river about two hundred yards below the ferry operated by Mrs. Hudspeth in the town of Newton, in said county," and in which they stated that they were "desirous of establishing a public ferry across said river on said lands" at a point "about two hundred yards below the ferry of said Mrs. Hudspeth." They also in their petition expressed the belief that "the establishment of said ferry would be of great utility to the people of both Baker and Mitchell counties," and upon this ground applied for "a ferry franchise" authorizing and empowering them to "establish and operate a public ferry across said river at said place for the full term of ten years from" the date last mentioned. On the same day, the board of county commissioners met, passed upon this petition, and granted the franchise therein applied for. Subsequently the board, at the instance of petitioners, passed a further order in terms authorizing them to maintain a "public free ferry" at the point above designated. Stirred into renewed activity by the result of these proceedings, Mrs. Hudspeth filed an amendment to her original petition, wherein she charged that, for various reasons assigned, the franchise applied for by R. L. and W. H. Hall had been improvidently granted, and in which she prayed, among other things, that they be enjoined from exercising the same. This amendment was met by an answer whereby they took issue with Mrs. Hudspeth as to the propriety of affording her the relief she sought. At the interlocutory hearing had upon this new phase of the case, his honor of the trial bench passed an order enjoining the defendants "from opening or operating any kind of a ferry on or over the lands of" Mrs. Hudspeth, which were adjudged to "extend two hundred and ten yards from the center of the public road where is established her ferry to the south, on the east side of

Flint river," and further enjoining them "from running any private
ferry within three miles of" her ferry.   An injunction any more
sweeping in its operation his honor declined to grant.   Not satis-
fied with this outcome, Mrs. Hudspeth sued out a bill of exceptions
to this court, and again appears before us as a plaintiff in error.

1.  Her chief cause of complaint appears to be that the court be-
low refused to grant the injunction for which she prayed, notwith-
standing "the undisputed evidence showed that plaintiff's facilities
were ample and all-sufficient at her ferry to accommodate the whole
public, and more too, and that another in that vicinity was not a
public necessity, nor a public convenience, in the sense that con-
veniences is meant in the law."   In this connection, she contends
that as "there was no public necessity for such other ferry," and as
she "had expended large amounts of money to equip her said ferry
for the purpose of accommodating the public," the "county authori-
ties had no right to afterwards render her property valueless by
granting another franchise to another person to establish a public
free ferry so near to" her ferry as to render the operation of the
same unprofitable.   She furthermore undertakes to call in question
the expediency of the action taken by the county commissioners in
granting a franchise to operate "a public free ferry at a place where,"
as the undisputed evidence showed, "there was no public highway—
no public road leading to or from said ferry;" especially in view of
the fact that the evidence did not disclose "any intention to estab-
lish a public road or highway to and from defendants' ferry."   From
the foregoing explanation of the position taken by Mrs. Hudspeth
with regard to the franchise granted by the county commissioners, it
will be perceived that she does not attempt to attack their action as
ultra vires, or to question their good faith in the premises.   Indeed,
she relies wholly upon her contention that they did not act wisely
or advisedly in the matter, since, as she ventures to assert, there was
really no public necessity for establishing a ferry at the point chosen,
or elsewhere in that vicinity.   We shall deal with the case accord-
ingly.   If, for any reason, the grant of ferry privileges to the de-
fendants was void, her right to collaterally attack it upon that
ground admits of no doubt.   If, on the other hand, the county au-
thorities had power, in their discretion, to grant such a franchise,
Mrs. Hudspeth can not, in her capacity as owner of a public ferry,
be heard to complain of their action; for, as is evident, she held

no exclusive privilege of conducting a ferry, and if "injured by the establishment and maintenance of another public ferry " in conformity to law, she could claim no right to recover damages, because she would, at least in legal contemplation, sustain none. This much was definitely settled when the case made its first appearance before us. See volume and page of Ga. Rep. above cited. As the writer observed in the case of *Keen* v. *Waycross*, 101 *Ga.* 592, "the law recognizes in no one a right to create or maintain a monopoly." On the contrary, the creation or encouragement of a monopoly is opposed to public policy. *City of Atlanta* v. *Stein*, 111 *Ga.* 789. It would therefore be idle to say that the county authorities owed Mrs. Hudspeth any legal duty of shielding her against the inevitable consequences of legitimate competition. See Railroad Co. *v.* Ellerman, 105 U. S. 174, cited approvingly in *Keen's* case, supra. Clearly, their duty was to serve, not Mrs. Hudspeth in her capacity as owner of a ferry, but the public; and it follows that official action in the premises looking solely to the welfare of the community at large was eminently proper. Furthermore, even upon the assumption that she had any standing in court upon the theory that her property rights were invaded by the action taken by the county commissioners, it is evident that she did not make out a case entitling her to the relief sought. The evidence introduced on the hearing below leads, we think, irresistibly to the conclusion that the opposition free ferry will prove itself a great public utility and convenience. Conceding, however, for the sake of the argument, that the granting of a franchise to operate this new ferry was lamentably inexpedient and unwise, judicial intervention upon this ground alone would be wholly without justification. The law is well settled that where public officials " are acting within the scope of their duties and exercising a discretionary power, the courts are not warranted in interfering, unless fraud or corruption is shown, or the power or discretion is being manifestly abused to the oppression of the citizen." *City of Atlanta* v. *Holliday*, 96 *Ga.* 546. To the same effect, see *Hamrick* v. *Rouse*, 17 *Ga.* 56; *State* v. *Woody*, Ibid. 612; *Semmes* v. *Columbus*, 19 *Ga.* 471; *Wells* v. *Atlanta*, 43 *Ga.* 67; *Allen* v. *Tison*, 50 *Ga.* 374; *Danielly* v. *Cabaniss*, 52 *Ga.* 212; *Mayor of Americus* v. *Eldridge*, 64 *Ga.* 524, 527; *Southern Mining Co.* v. *Lowe*, 105 *Ga.* 352, 356; *City of Atlanta* v. *Stein*, supra.

2. There is even less merit in the further contention of the plaintiff in error, that the decision rendered by this court when the case was before us at the last term stood in the way of defendants securing a grant authorizing them to conduct a public ferry at the place designated in the application which they addressed to the board of county commissioners. We merely ruled that, without a grant from the proper county authorities, a ferry such as that R. L. Hall claimed he had a right to establish could not lawfully be conducted, at that or at any other point on the river, to the prejudice of Mrs. Hudspeth. We certainly did not undertake to in any manner disenfranchise him, or to even question his right, pending the litigation in the trial court, to exercise his privilege as a citizen and landowner to apply for and secure a grant authorizing him to maintain a public ferry at the point in controversy. There was ample testimony to warrant the conclusion that the new ferry was not located upon Mrs. Hudspeth's land.

It may be remarked, before concluding, that in the brief filed in behalf of the plaintiff in error, counsel suggest several other reasons why, in their opinion, the trial judge should have granted the injunction prayed for. We have with much interest, if not with equal profit, read all they have to say in this connection; but as none of the questions thus sought to be raised are presented by the bill of exceptions, we can not, of course, with propriety undertake to deal with them.

*Judgment affirmed. All the Justices concurring.*