AULTMAN *et al.* v. HODGE, commissioner, *et al.*

1. The petition in the instant case, for the change of the county line under the Civil Code (1910), § 468, specified with sufficient particularity the situation, direction, and exact location of the original line.

2. The provision of section 468, supra, for the posting of notices "at three public places in every militia district adjacent to the line to be changed," does not require the posting of notices in every district throughout the length of the county line, unless the line is to be changed throughout its entire length. It is sufficient if the notice be posted at three public places in the militia districts adjacent to that part of the line sought to be changed.

3. The act of 1881 (Acts 1880-81, p. 52; Civil Code (1910), §§ 468-471) is a general law, and is not unconstitutional because: (1) it seeks to repeal an act approved October 14, 1879 (Acts 1879, p. 42), by mere reference to the title of said act, in violation of article 3, section 7, paragraph 17, of the constitution of Georgia (Civil Code (1910), § 6445); (2) the act permits a serious invasion of the territorial integrity of a county, in violation of article 11, section 1, paragraph 1, of the constitution of Georgia (Civil Code (1910), § 6594); (3) no provision for appeal to any tribunal by a citizen and taxpayer is made, in violation of the "due-process clause" of the constitution of the State.

4. Where the provisions of the act have been fully complied with, the quantity of land that may be transferred from one county to another by a change of county line is limited only by the restrictions contained in the act; that is, by the discretion of those officials named in the

act, and by the constitutional prohibitions against the removal of a county-site, or the dissolution of a county, except in the manner prescribed in article 11, section 1, paragraphs 4 and 5, of the constitution (Civil Code (1910), §§ 6597, 6598).

(a) The change of the county line sought to be made in the present case does not offend the constitutional guaranties above referred to; nor can it be held that the judge of the superior court abused his discretion in refusing an interlocutory injunction on the facts of the case.

No. 406.    FEBRUARY 13, 1918.

Petition for injunction. Before Judge Mathews. Houston superior court. May 15, 1917.

*Houser & Nicholson, C. L. Shepard,* and *John R. L. Smith,* for plaintiffs. *Duncan & Nunn, C. E. Brunson, R. N. Holtzclaw, Jule Felton,* and *John B. Guerry,* for defendants.

GEORGE, J.   A petition was filed by certain citizens and taxpayers of Houston county, to restrain the commissioners of roads and revenues of that county from passing upon and approving or disapproving a recommendation of the grand jury "sanctioning" a change of the county line, under the act of 1881 (Acts 1880-81, p. 52; Civil Code (1910), §§ 468-471, inclusive). Certain citizens and landowners residing in the southwestern portion of the county filed a petition with the ordinaries of Houston and Macon counties, for a change of the county line; and the grand juries of said counties, by the requisite two-thirds vote, sanctioned the petition. The change of the county line sought to be made would result in transferring from Houston to Macon county approximately 200 lots of land, containing about 40,000 acres, from which Houston county derived revenue to the amount of approximately $9,000 annually. The action of the Houston county grand jury was duly certified by the clerk of the superior court, and was presented to the commissioners for approval or disapproval. Before the commissioners had passed upon the recommendation, this petition was filed. The judge of the superior court denied the injunction.

The evidence in support of the grounds upon which the court was asked to grant the injunction was in conflict, except as hereinafter noticed. On the controverted issues of fact, the case is within the general rule that the discretion of the judge of the superior court in granting or refusing interlocutory injunctions on controverted issues of fact will not be disturbed, unless there has been a manifest abuse of the discretion. The rule applies with peculiar force in a case where a court of equity is asked to enjoin

the doing of an act within the discretion of public officials, and with still more force where the discretion vested in the officials is in effect a delegation of legislative authority.

1.   It is insisted that the petition for the change of the county line in the instant case does not "set forth the exact character of the change to be made, specifying particularly the situation, direction, and existing marks and monuments, if any, of the original line," as required by section 468 of the Civil Code (1910). The petition describes the exact location of the proposed new line and the land lots and fractions thereof to be cut off by the new line from the county of Houston and attached to the county of Macon.   In addition, a map or plat showing the original county line, the change sought to be made in the line, and the territory affected by the change, is attached to the petition as a part thereof. This plat discloses not only the original county line, but shows the boundaries of each lot of land and fractional lot lying adjacent thereto.   The petition describes with sufficient particularity the situation, direction, and exact location of the original line.

2.   Section 468, supra, requires that the notice of intention to apply for a change of a county line shall be posted "at three public places in every militia district adjacent to the line to be changed."   It is contended, that, since the line sought to be changed in the present case is the boundary line of Houston county, separating Houston county from Macon county on the west, the notice required by the section must be posted in every militia district of Houston county adjacent to the line between Houston and Macon counties throughout the whole length of such line, although the change sought to be made in the line does not extend beyond the limits of two militia districts, for example, in the southwest corner of Houston county.   We do not think this contention is sound.   It is sufficient if the notice be posted, as required by the section, in the district or districts to be affected by the change, or, in other words, in those districts lying adjacent to the part of the line sought to be changed.   We think this is manifest when consideration is given to the further requirements of the section with respect to the publication of such notice in a public gazette having general circulation in the county, and to the posting of such notice at the county site.

It is earnestly insisted that the transfer of a large area of land

under the act of 1881 (Acts 1880-81, p. 52; Civil Code (1910), §§ 468-471) was not within the contemplation and intention of the legislature in the passage of that act. It is further insisted that if the legislature did so intend, the act in question is unconstitutional. These contentions will be considered together. Prior to the constitution of 1877 the method of changing county lines was by a special act of the legislature for that purpose. In many instances several lots, in other instances a few acres, and in several instances only the "residences" of certain named persons were transferred from one county to another. The following provision was inserted in the constitution of 1877: "County lines shall not be changed unless under the operation of a general law for that purpose." Article 11, sec. 1, par. 3, Civil Code (1910), § 6596. In 1879 the legislature passed its first act under this constitutional provision. Acts 1879, p. 42. That act provided that "any citizen owning land adjacent to the boundary line of any county in this State, who may desire, for the necessity or convenience of performing the duties of citizenship, to have such lands transferred to an adjoining county, such citizen shall petition the ordinary of the county in which the land is situated for an order to have such transfer perfected," etc., and prescribed the method by which such land might be transferred from one county to another. This method was by a jury trial upon proof of the necessary allegations of the petition. The act of 1881, supra, repealed the act of 1879, and gave to "a citizen, or any number of citizens, of any county in this State," desiring "to have the boundary line of the county of his or their residence changed," the right to do so by following the provisions of the act. The act is a "general law." *Worth County v. Crisp County*, 139 *Ga.* 117 (76 S. E. 747). Under the act of 1881, the matter of taking proof was dispensed with. The grand jury is taken from all parts of the county, and is presumed to represent the sentiment of the county; and the present act seems to make the sanction by the grand jury of a petition for the change of a county line a matter of approval rather than legal finding. The act of 1879 was limited in its scope, and authorized the transfer only of land adjacent to the county line. The limited scope of the first act was extended by the present law, and the quantity of land that may be transferred from one county to another, under the law as it now stands, is limited only by the discretion of the

officials authorized by the act to change a county line, subject to the inhibitions of the constitution that a county site shall not be changed nor a county dissolved except in the manner prescribed by the constitution. Civil Code (1910), §§ 6597, 6598; *County of DeKalb* v. *Atlanta,* 132 *Ga.* 727 (65 S. E. 72). The land sought to be transferred by the change of county line in the instant case is not all adjacent to the line in the sense that every lot is contiguous thereto, but the land is in one body, and, considered as a tract, is adjacent to the existing line. We find no warrant in the act under consideration to limit its operation to the narrow scope of the act of 1879, and it can not be said that the quantity of land sought to be here transferred will amount to a dismemberment or dissolution of Houston county. The removal of the county site is not threatened.

Is the act of 1881, supra, unconstitutional because it seeks to repeal the act approved October 14, 1879, by a mere reference to the title of that act? The caption of the present law is "An act to provide for carrying into effect paragraph 3 of section 1, article 11 of the constitution of this State, and to repeal an act entitled an act to carry into effect paragraph 3, section 1 of article 11 of the constitution of this State, approved October 14, 1879." The constitutional inhibition against the repeal of an act or code section by mere reference to the title is limited to the manner of express repeal, and has no application to repeal by necessary implication. *Nolan* v. *Central Georgia Power Co.,* 134 *Ga.* 201 (3), 207 (67 S. E. 656). The present act was incorporated in both the Code of 1895 and the Code of 1910. Whatever defect may have existed in the act as originally passed, in respect to the objection here urged, was cured by the incorporation of the provisions of the act into the Codes of 1895 and 1910 and the adoption of those codes by the General Assembly. *Parks* v. *State,* 110 *Ga.* 760 (36 S. E. 73) ; *Daniel* v. *State,* 114 *Ga.* 533 (40 S. E. 805). It is not conceded that the act in question required the aid of the adopting acts. *Welborne* v. *State,* 114 *Ga.* 793 (7), 821 (40 S. E. 857), and cases cited in the opinion. That the legislature, prior to the adoption of the constitution of 1877, had the absolute power to change existing county lines, is not doubted. That the legislature, under the constitution of 1877, may by general law delegate this power, can not be questioned. From what we have said it follows

that the act of 1881 was within the competency of the legislature. The right of appeal is not necessary to its validity. Indeed, the right of appeal is matter of grace, and is fixed by statute. The question is above private-property rights and relates to the political subdivisions of the State. We have assumed, and are fully warranted in so assuming, that a court of equity may prevent the change of a county line where the law under which the change is sought to be made is for any reason unconstitutional and void. *County of DeKalb* v. *Atlanta,* supra. We have conceded, without deciding, that a court of equity may also interfere to prevent the change of a county line, if fraud or corruption be shown, or if it appear that the discretion vested in the officers authorized to make such change is being manifestly abused to the oppression of the citizen and taxpayer. Cf. *City of Atlanta* v. *Holliday,* 96 *Ga.* 546 (23 S. E. 509); *Hudspeth* v. *Hall,* 113 *Ga.* 4, 7 (38 S. E. 358, 84 Am. St. R. 201). It follows, however, that the act of 1881 is within the competency of the legislature, and is not unconstitutional for any of the reasons urged; and that the judge of the superior court, on the facts in the present record, did not manifestly abuse his discretion in denying the interlocutory injunction.

*Judgment affirmed. All the Justices concur.*