27318. CITY OF WAYCROSS *v.* HARRELL.

DECIDED MARCH 4, 1939.

*F. B. McDonald Jr., Q. L. Garrett,* for plaintiff.
*Herbert W. Wilson, Harry M. Wilson,* for defendant.

SUTTON, J. Pursuant to the provisions of the act of 1925 (Ga. L. 1925, p. 1557 et seq.), the City of Waycross, during the years 1926 and 1927, paved some of its streets, including Isabella Street and McDonald Street. This act provides that the expense of paving and improving the streets of Waycross be assessed against the abutting property owners according to the frontage of their respective properties on the streets to be improved, and for the issuing of bonds to secure funds for the payment thereof. L. B. Harrell owned a vacant corner lot extending 150 feet along Isabella Street and 100 feet along McDonald Street. After complying with the necessary requirements of the act of 1925, the city, by separate ordinance for each street paved, assessed the abutting property owners for their part of the cost of said paving, based on the front-foot rule, and the aggregate amount of the assessments against L. B. Harrell's lot, for the two streets just mentioned, was $1571.84, being $591.15 for McDonald Street and $980.69 for Isabella Street. These assessments were made September 9, 1926, and January 11, 1927, respectively. Harrell signed no petition requesting the paving of these streets, nor did he make any objections to the assessments. The streets mentioned were paved, but nothing was paid on the assessments by Harrell. About ten years later the city issued two in-rem executions against the property, one for $836.74 and the other for $1555.19, making a total of $2391.93, including interest, and these fi. fas. were levied on the lot in question in 1937. The defendant then filed his separate affidavits of illegality in which he set up, in substance, that the lot levied on had not been benefited by the street improvements, and that it was of no greater value after said improvements were made than before, that it was a vacant lot and there was such a gross disproportion between the value of this lot and the sum assessed against it (the value and assessments both being specified), that if the City of Waycross be permitted to proceed with the collection of the assessments against said lot such action would amount to a confiscation of this property and would be in violation of the constitution of Georgia, Code §§ 2-102, 2-103, and the constitution of the United States, Code, § 1-805. It was alleged that the value of the lot before and after these streets were paved, and at the time of the levies, was $500, and that the amount of the assessments was $1555.19, and that the amount of the executions, including interest, was $2391.93. The general demurrers

of the city to the affidavits of illegality were overruled. The two causes were then consolidated into one case, which was tried before the judge without the intervention of a jury. The court sustained the affidavits of illegality and dismissed the levies. The plaintiff made a motion for new trial, which was overruled, and the exception here is to that judgment, and also to the orders overruling the general demurrers to the affidavits of illegality. This case was carried to the Supreme Court, and transferred by that court to this court for determination. 186 *Ga.* 833 (199 S. E. 119).

Both sides concede that the question here involved is whether or not the defendant, who owned the property in controversy before, at the time of, and ever since the assessments were made in 1927, can, for the first time, in the year 1937, raise the issue that the assessments were confiscatory and void. It was agreed by the parties that all the provisions and requirements of the act of 1925 (Ga. L. 1925, p. 1557 et seq.), with reference to paving the streets in question and making the assessments therefor against complainant's property had been complied with. But it was contended by Harrell, as above stated, that his property levied on had not been benefited by the street improvements, and that if the city were permitted to proceed with the collection of the assessment against his lot this would amount to a confiscation of his property and would be in violation of the State and Federal constitutions. This point would have been good and could have been sustained had it been raised in time, as the record discloses that the property in question was not benefited by the street paving, and that the amount of the assessments was more than three times the value of the property. In this connection see *City of Atlanta* v. *Hamlein,* 96 *Ga.* 381 (23 S. E. 408) and *Mayor &c. of Savannah* v. *Knight,* 172 *Ga.* 371 (157 S. E. 309), and cit., where it was held, in effect, that the levy and enforcement of such an assessment amounts to a virtual confiscation of the abutting owner's property, and that the same can not be upheld as a legal or valid exercise of the power to tax for such improvements.

It was provided by the special act of 1925 that the property owner was given the opportunity of paying the assessment against his property in cash within thirty days, without interest, or in ten equal annual instalments with interest. The defendant did not pay the assessment or any part thereof. The city could have issued

618

an execution each year after the assessment was made against the lot in question for one tenth of such assessment, but, instead of doing so, it waited until the ten-year period had expired and then issued executions for the entire amount of the assessments with interest and had the same levied on the defendant's property. Section 11 of the act of 1925, p. 1567, also provides that the defendant shall have the right to file an affidavit denying that the whole or any part of the amount for which the execution issued is due, setting out in detail why he claims that the amount is not due, and when filed with the levying officer it shall be returned to the superior court and there tried and the issue determined as in cases of illegality. However, it is contended by the plaintiff that although the defendant was given a fair opportunity to be heard, after the assessments were made and before the street improvements were made, he stood by without making any objections whatever, and that he is now estopped to raise the question that his property was being confiscated. Section 12 of the act of 1925, p. 1567, provides: "Be it further enacted by the authority aforesaid, That no suit shall be sustained to set aside any such assessment or to enjoin the said City of Waycross, or its City Commission, from making any such assessment or levying or collecting any such assessments, or issuing such bonds or providing for their payment as herein authorized, or contesting the validity thereof on any ground or for any reason, other than for the failure of the City of Waycross, by its City Commission, to adopt and publish the preliminary resolution or ordinance provided for in section 3 of this act in cases requiring such resolution or ordinance and its publication, and to give the notice of the hearing of the appraisers as herein provided for, unless such suit shall be commenced within sixty days after the passage of the ordinance making such final assessment; Provided, that in the event any special assessment shall be found to be invalid or insufficient for any reason whatever, the said City Commission may at any time in the manner provided for the levying an original assessment proceed to cause a new assessment to be made and levied which shall have like force and effect as an original assessment."

In *Draper* v. *Atlanta*, 126 *Ga.* 649, 653 (55 S. E. 929), it was said: "When it appears that the city has jurisdiction of the subject-matter, that the pavement has been laid, and that execution

has been issued pursuant to law, it is too late for an abutting property owner to contest the discretionary powers of the municipal authorities in deciding the propriety of substituting a new for an old pavement. In cases where there is jurisdiction, the property owner will be estopped from questioning the validity of the proceedings of the mayor and council, if he stands by and permits the work to be done without interposing any objection. Elliott on Roads & Streets, § 589. The act of 1897 gives the abutting land owner an opportunity to appear before council and oppose the contemplated improvement; and if he appears and the municipal decision is adverse to his contention that there is no necessity for the improvement, he may then apply to the courts to restrain further municipal action, provided he alleges and shows fraud or corruption on the part of the city authorities, or that the discretion vested in them is being manifestly abused to his oppression. *Hudspeth* v. *Hall,* 113 *Ga.* 7" (38 S. E. 358, 84 Am. St. R. 200). In *Hall* v. *Macon,* 147 *Ga.* 704 (2) (95 S. E. 248), it was held: "Where a municipal corporation has jurisdiction to pave its streets and to assess the cost thereof against owners of abutting property, such owner will be estopped from questioning the regularity of the proceedings of the mayor and council, if he stands by and permits the work to be done without interposing any objection." In *Avery & Sons Inc.* v. *Atlanta,* 163 *Ga.* 591 (3) (136 S. E. 789), it was held: "After the mayor and general council, on the report of its street committee, finally adopts an ordinance establishing a taxing district for a proposed improvement, and providing for the improvement, and the same is not stopped by injunction or other legal process, then the owners will be concluded from further objecting thereto, either as to the form in which the work is done, or the map made, or any other technicality connected therewith; and when such owners do not take steps to enjoin such ordinance or the assessments levied on their property until the improvement has been practically completed, and the city has expended a large sum in making the improvement, relying upon such assessments to meet the expense, they will be precluded and estopped from attacking such assessments upon the grounds, (a) that the collection thereof will deprive them of their property in violation of the due-process clauses of the State and Federal constitutions, and (b) that the levy of such assessments has been made in an arbitrary and un-

reasonable manner." See also *Burns* v. *Atlanta*, 148 *Ga.* 549 (3) (97 S. E. 536); *Raines* v. *Clay,* 161 *Ga.* 574 (131 S. E. 499); *Bower* v. *Bainbridge,* 168 *Ga.* 616 (2-a) (148 S. E. 517); *Georgia Power Co.* v. *Decatur,* 181 *Ga.* 187, 201 (182 S. E. 32); *City of LaGrange* v. *Pounds,* 50 *Ga. App.* 219, 228 (177 S. E. 762). "The better view also seems to be that where such estoppel is operative, such estoppel will be enforced at law or in summary proceedings, as well as where parties are seeking affirmative relief in equity against the enforcement of assessments for street improvements. 2 Paige & Jones on Taxation by Assessment, § 1025. A mere protest against street improvement, or mere threat to take legal proceedings to prevent such improvements, is not sufficient to defeat such estoppel. [Citing.]" *Bower* v. *Bainbridge,* and *Georgia Power Co.* v. *Decatur,* supra.

There was no contention by the defendant that the city did not have jurisdiction and authority, under the special act of 1925, to make the assessments and pave the streets in question, his only contention being that the assessments were confiscatory and could not be enforced against his property. Applying the above decisions to the undisputed facts of this case, we conclude that when the property owner was given fair opportunity to object to the assessments, but failed to do so within the time provided by the statute, or in fact at all, and then stood by and saw the streets paved without objections, he is now estopped to raise the question that the assessments were confiscatory and void. Furthermore, under the provisions of section 12 of the act, the defendant was precluded from making the attack on the assessments by reason of his failure to make it in the time therein provided. It follows from the above that the trial judge erred in overruling the motion for new trial.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*